HOSPITAL CREDIT EXCHANGE, INC., Plaintiff, *v.* MICHAEL SHAPIRO, Defendant.

Municipal Court of the City of New York, Borough of Manhattan, February 15, 1946.

*Thornton C. Land* for plaintiff.

*Samuel N. Leiterman* for defendant.

*Abraham N. Davis* for New York County Lawyers' Association, *amicus curiæ.*

HAAS, J. Plaintiff moves for summary judgment under rule 113 of the Rules of Civil Practice, and under the same rule the defendant has applied for a dismissal of the complaint. The action was brought to recover a balance alleged to be due for hospital services rendered to the defendant's wife.

Defendant has interposed a special defense, the substance of which is that the plaintiff is a membership corporation engaged in business as a collection agency; that it solicits claims, demands and causes of action from hospitals located in the city of New York and elsewhere and takes assignments of these claims for the sole and express purpose of instituting suit thereon in its own name although in behalf of such hospitals;

that the claims are assigned to plaintiff upon an agreement between plaintiff and the assignor that the claim and any moneys collected thereon shall continue to be the property of the assignor and that plaintiff will remit to the assignor the amount collected less an agreed percentage representing the plaintiff's fee for its services in effecting collection; that the plaintiff supplies counsel to render legal services in collecting claims and pays such counsel, and also pays all other expenses and disbursements which may be incurred; that the plaintiff has solicited large numbers of such claims and instituted suit thereon and has furnished legal services to various hospitals and continues to do so; that it also drafts legal papers and instruments, including assignments of claims and such documents as may be necessary to establish and enforce liens under section 189 of the Lien Law and under the Workmen's Compensation Law, and, generally, that plaintiff is in the business of soliciting these claims to institute suit thereon in its own name for the benefit of the hospitals and for fees which it charges and collects, and that plaintiff is thus engaged in the practice of law contrary to public policy and in violation of the Penal Law.

The New York County Lawyers' Association has intervened as *amicus curiæ* and asks that the complaint be dismissed.

Plaintiff, Hospital Credit Exchange, Inc., was incorporated under the Membership Corporations Law and its certificate of incorporation was approved by a justice of the Supreme Court in March, 1939. Its purposes, as stated in the certificate of incorporation, are:

" To admit as participating members all non-profit hospitals located in the City of New York and such other non-profit hospitals in the vicinity as may from time to time be determined.

" To render services to member hospitals in connection with obtaining payment for care received by patients therein.

" To render such services at actual cost to the corporation by adjusting rates charged as experience may from time to time permit, and by rebating pro rata to member hospitals, at such times as may be practicable, any excess of fees received over cost of services rendered.

" To afford member hospitals the means of combining to procure in the most economical manner the rendition of the following services:

" The investigation of the financial responsibility of persons admitted as patients in member hospitals and of such other persons as may be legally responsible for their support.

" The collection of moneys due to member hospitals for the care of patients.

" The study of admission procedures in member hospitals as regards credit with the object of improving and standardizing those procedures for the financial protection of member hospitals.

" To further through such means the fundamental object and purpose of the member hospitals, by conserving and enhancing their financial capacity to render the maximum amount of care to the indigent sick.''

The factual allegations of the special defense hereinabove summarized are well substantiated by undisputed evidence embodied in the affidavits submitted on this motion; I do not at this point refer to the conclusions stated in the defense.

It appears that the plaintiff maintains offices in an office building situated in lower Manhattan; that it has made arrangements with a large number of charitable hospitals in the city and vicinity of New York under which these hospitals refer to plaintiff for collection bills which they themselves have been unable to collect; that these claims are generally, although not always, assigned to plaintiff by written instruments of assignment; that plaintiff in its own name sends collection letters to the debtors requesting payment and stating that if the bill remains unpaid it will be turned over to an attorney for collection; that if no results are obtained collection letters are then sent by an attorney who is employed by plaintiff on a regular salaried basis; that ultimately suit is instituted by the plaintiff in its own name; that usually before suit is begun the plaintiff, which also employs a staff of so-called field workers, attempts to collect the debt by sending one of these workers to call personally upon the debtor.

The present case came to plaintiff in accordance with the procedure outlined above and this suit was instituted by the said salaried attorney for and in the name of plaintiff as assignee of a charitable hospital. Subsequently plaintiff's present attorney was substituted in place of the employee-attorney.

The facts above narrated are all contained in the affidavits submitted by the respective parties and there is no substantial dispute concerning them. These, and many other facts which it is not necessary to state here, were also developed in extensive hearings conducted by the New York County Lawyers' Association.

It seems plain to me that the plaintiff is conducting the business of an ordinary collection agency; that it solicits claims

and takes assignments of such claims for the purpose of bringing suit and that after effecting collection by suit or otherwise it retains for itself a percentage of the amount collected, out of which it pays its office expenses and its salaried employees, including the attorney. It will be assumed, although the evidence is not conclusive in that respect, that any profits it realizes over and above these expenses are distributed proportionately among the hospitals whose claims have been collected, in the same ratio as the collections effected for the respective hospitals bears to the total amount of plaintiff's collections over a given period of time.

The rates charged by plaintiff for making collections are as follows: before discharge of the patient from the hospital, and until sixty days after discharge, 10%; from sixty days to six months after discharge, 17½%; from six months to one year after discharge, 25%; from one year to two years after date of discharge, 33⅓%; after two years from date of discharge, 40%; in any case where suit is brought the above rates are increased by 10%, with a minimum charge of 25%. The schedule of rates also includes charges for public liability cases and other types of action, but it is not necessary to discuss those rates here.

As I have indicated, the plaintiff operates in the same way as a collection agency, and I believe that the taking of assignments of these claims for suit and the bringing of suits thereon is a violation of section 280 of the Penal Law, which expressly forbids (subd. 1) any corporation from practicing " as an attorney-at-law," from rendering " legal services or advice " or from furnishing " attorneys or counsel " or " legal services of any kind in actions or proceedings of any nature ", and which provides (subd. 2) : " No corporation  *  *  *  shall  *  *  * solicit any claim or demand, or take an assignment thereof, for the purpose of representing any person in the pursuit of any civil remedy," and (subd. 3) : " No  *  *  *  corporation shall ask or receive, directly or indirectly, compensation for preparing  *  *  *  assignments  *  *  *  or pleadings of any kind in actions or proceedings of any nature ", and also (subd. 5) : " *  *  *  no corporation shall be permitted to render any services which cannot lawfully be rendered by a person not admitted to practice law in this state nor to solicit directly or indirectly professional employment for a lawyer."

The plaintiff has also violated section 275 of the Penal Law, which provides in part: " No person or co-partnership, engaged directly or indirectly in the business of collection and

adjustment of claims, and no corporation or association, directly or indirectly, itself or by or through its officers, agents or employees, shall solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon * * *."

The plaintiff contends that it is a charitable corporation and that as such it is specially exempted from the prohibitions found in the above-quoted provisions of sections 275 and 280 of the Penal Law by virtue of chapter 549 of the Laws of 1941, amending section 275 of the Penal Law, and also by reason of subdivision 4 of section 280 of the Penal Law, as well as because of the exceptions contained in subdivision 5 of section 280 of the Penal Law.

The plaintiff, in my opinion, is not a charitable corporation. It is true that its only clients or customers are charitable hospitals. However, the fact that for a fee it serves only charitable institutions does not make it a charitable corporation. The further fact that, after paying salaries to employees and commissions on collections to the above-mentioned field workers, it distributes its profits to the charitable institutions which it serves, does not make it a charitable corporation.

Not so easily is the law circumvented which prevents collection agencies from carrying on a legal practice. Any collection agency could thus become a charitable corporation if it organized itself under the Membership Corporations Law instead of under the Stock Corporation Law, if it undertook to serve only charitable organizations and if, after remunerating its staff however handsomely, it distributed its so-called profits among its clients. This might be very good business for the officials of a closely managed collection agency, who could thus grant themselves very satisfactory compensation for conducting what is tantamount to a law practice. It is not necessary that such compensation take the form of dividends or a distribution of profits; it may be paid in salaries or commissions. That all of the earnings are not distributed to the staff but that a portion is returned as " profits " to the charitable organizations which are the agency's exclusive customers, does not palliate the violations of law which have been committed and does not make the practices of the agency any the less contrary to the public policy implicit in the statutory inhibitions.

Section 275 of the Penal Law was amended by chapter 549 of the Laws of 1941 as follows, the amendment consisting of the italicized words: " Nothing herein contained shall affect any assignment heretofore or hereafter taken by any moneyed corporation authorized to do business in the state of New York or its nominee pursuant to a subrogation agreement or a salvage operation, *or by any corporation organized for religious, benevolent or charitable purposes.*"

But the exception thus specified in this amendment does not apply to plaintiff which was not, as I have indicated, truly organized for " benevolent or charitable purposes." Moreover, nothing contained in that amendatory statute permits even a charitable corporation to take assignments merely for the purpose of practicing law. A charitable corporation may, by virtue of that amendment, properly take an assignment of a chose in action if it is to become the real party in interest but not merely in order to collect the same by suit for the benefit of the assignor and in order to earn for itself a fee. I do not conceive that the said amendment was intended to authorize charitable corporations to practice law. If the Legislature had intended to confer upon charitable corporations the right to practice law it would have so provided in explicit terms. It is not to be inferred from anything contained in the act as amended that so radical a change in public policy was intended to be effected.

Plaintiff is not helped by the exceptions contained in subdivision 5 of section 280 of the Penal Law which provides that the section shall not " apply to organizations organized for benevolent or charitable purposes, or for the purpose of assisting persons without means in the pursuit of any civil remedy, whose existence, organization or incorporation may be approved by the appellate division of the supreme court of the department in which the principal office of such corporation or voluntary association may be located."

I read that section as meaning that any organization " organized for benevolent or charitable purposes " which desires to be excepted from the operation of section 280 must be approved by the Appellate Division of the Supreme Court of the department in which its principal office is located. Plaintiff would read the requirement for such approval as applicable only to organizations having " the purpose of assisting persons without means in the pursuit of any civil remedy ". But I construe it as equally applicable to " organizations organized for benevolent or charitable purposes ". Even the punctuation of the entire

subdivision indicates to me that such is the proper construction. I am mindful of the comma after the word " purposes " and again after the word " remedy," and I think that the word " whose " refers to both types of organizations. I do not of course trust to punctuation alone. I think common sense suggests this interpretation. There is no good reason for distinguishing between the two types of organizations, so that one requires approval and the other does not. The Appellate Division of this Department has indicated that it so construes the section. In *Matter of Associated Lawyers' Co.* (134 App. Div. 350, 352) it said: " It seems to us quite evident that the only authority given to this court is to approve ' organizations organized for benevolent or charitable purposes, or for the purpose of assisting persons without means in the pursuit of any civil remedy.' "

I think it should be said in fairness to plaintiff and to the numerous public-spirited citizens who, actuated by the best of motives, have interested themselves in this case and who have submitted affidavits commending the activities of plaintiff and showing how helpful it is to the hospitals it serves, that the plaintiff was organized with the best of intentions and that it is sponsored by the Greater New York Hospital Association and by the New York Hospital Fund. Undoubtedly plaintiff saves money for the charitable hospitals it serves; those institutions find it less expensive than any other method of collecting their outstanding bills. The officers and trustees of the various hospitals strongly approve of plaintiff; the people who conduct the business of plaintiff, that is, its officials and employees, are apparently honest and efficient. Nevertheless, although the motives of the people who organized the plaintiff are commendable, and although the many persons who have come to its aid merit the respect of this court, the plaintiff must nevertheless yield to the public policy which interdicts the practice of law by lay agencies. That policy springs from a vital public necessity. Balancing the conveniences, and weighing the respective public interests involved, I am constrained to the conclusion that to tolerate the practice of law by this plaintiff, and plaintiff is undoubtedly practicing law, is to set a most dangerous precedent and to sanction a clear, though well-intentioned, violation of statutes which are as specific as they could have been made.

It seems to me that either the plaintiff must refrain from bringing these actions in the courts, or it must seek and obtain the approval of the Appellate Division of the Supreme Court in accordance with subdivision 5 of section 280 of the Penal

Law.  Plaintiff did at one time institute a proceeding to obtain such approval but it abandoned it.  I do not, of course, know whether the plaintiff is entitled to the approval of the Appellate Division, but I am satisfied that without such approval it cannot maintain this suit.

The case must therefore be dismissed, for the court may not suffer a suit instituted in violation of the Penal Law.

The plaintiff's motion for summary judgment is denied.

Summary judgment is granted in defendant's favor.  Judgment may be entered dismissing the complaint.

Execution of judgment for costs will be stayed for ten days after service of notice of entry.

Settle order.