Regis O’Brien, J.
The defendant seeks an order (1) dismissing the complaint on the ground that the plaintiff has not the legal capacity to commence this action, because it is a membership corporation and by reason thereof is prohibited from taking any assignment of an alleged claim and instituting suit thereon; or (2) dismissing the complaint because it appears on the face thereof not to state facts constituting a cause of action; or (3) dismissing the first cause of action alleged in the complaint on the ground that it fails to state a cause of action; or (4) dismissing the second cause of action alleged in the complaint because it fails to state a cause of action; or (5) requiring the complaint to be made more definite and certain, by stating the causes of action that were assigned to the plaintiff and by whom they were assigned and the facts upon which each of such causes of action are founded and the amount of each such causes of action; or (6) requiring the plaintiff to number and state separately:
(a) each cause of action assigned to it, by whom and when assigned, and the facts upon which each cause of action is founded and the amount of each such causes of action; and
(b) each cause of action based upon each publication of an advertisement by the defendant as respects each of the plaintiff’s assignors.
The complaint alleges two causes of action. For a first cause gf action, the plaintiff alleges:
*635 First: That it is a membership corporation of New York State.
Second: That defendant is a domestic corporation.
Third: That plaintiff corporation is “ comprised of member organizations” which “manufacture approximately ninety-five percent (95%) in dollar sales of all restaurant china manufactured in the United States ”.
Fourth: That prior to the commencement of the action, the several ‘ ‘ member organizations * * * duly assigned to plaintiff their respective causes of action against the defendant ”, growing out of the matters thereafter alleged in the -complaint.
Fifth: That plaintiff’s assignors for many years had manufactured restaurant chinaware and advertised extensively throughout the United States the sanitary nature and other advantages of china dinnerware manufactured by them.
Sixth: That by such means they had acquainted the users of and potential customers for, with the names of plaintiff’s assignors as being the manufacturers of such products.
Seventh: That by such advertising, the plaintiff’s respective assignors had gained the confidence and respect of the users of their products, particularly as to the sanitary benefits thereof, all of which was reflected in their respective increase of yearly sales.
Eighth: That the products of said assignors were received and used with complete confidence by the users thereof, particularly as to their sanitary qualities.
Ninth: That the plaintiff’s assignors and the defendant were and are competitors in the manufacture and sale of restaurant ware.
Tenth: That the defendant, “wilfully, maliciously, falsely and fraudulently caused to be published and widely circulated among the users and purchasers of restaurant dinnerware many advertisements allegedly representing the comparative sanitary qualities of the defendant’s product and restaurant china ” and further that ‘ ‘ upon information and belief, the advertisements of the defendant purported to illustrate and portray the relative sanitary qualities ” of the products “ as determined by a testing made by a leading, prominent and respected institution in the field of public health.”
Eleventh: That the alleged ‘1 test ’ ’ was ‘1 wilfully, maliciously, falsely and fraudulently ” represented by the defendant to show that the products of plaintiff’s assignors were inferior to those of the defendant from the standpoint of sanitary quality.
*636 Twelfth: That the defendant’s advertisements were false and known by the defendant to be false, yet nevertheless were circulated and published to injure and destroy the amicable business relations between the plaintiff’s assignors and their customers to enhance the defendant’s profits.
Thirteenth: That solely by reason of the “ wilful, malicious, false and fraudulent advertisements ” published and circulated by the defendant, the business of plaintiff’s assignors was reduced and former and potential customers led to believe that such products were of poor sanitary quality.
Fourteenth: That the plaintiff’s assignors were obliged to expend substantial sums for advertising to overcome the false representations of the defendant’s advertising.
Fifteenth: That the plaintiff’s assignors suffered damage in the sum of $1,000,000.
For a second cause of action, the plaintiff realleged the contents of paragraphs First through Eleventh and Thirteenth and Fourteenth of the first cause, in paragraph Sixteenth. It then continues:
Seventeenth: That the defendant negligently misinterpreted and misrepresented the tests which it had conducted.
Eighteenth: That the misrepresentations of the defendant, and the damages caused thereby, were due solely to its negligence and without any contributory fault on the part of plaintiff’s assignors.
Nineteenth: That defendant’s negligence and carelessness caused plaintiff’s assignors damages in the sum of $1,000,000.
The court has referred to the different allegations of the complaint somewhat in detail to show the tenor and gravamen of each cause of action. However, the question posed by the defendant’s motion, viz., does the plaintiff have the legal capacity to sue, must first be determined. Defendant claims it has not such capacity.
As will be noted, the complaint alleges that plaintiff is a membership corporation organized under the laws of New York State with its principal office in Erie County.
The certificate on file contains, as required by such law, a recital of the purposes for which it is incorporated. Clause numbered Second of the certificate which was filed in the Erie County Clerk’s office on June 11, 1957, recites “the purposes for which this corporation is to be formed are:
“ To educate the Public with the advantages and superiority of American manufactured restaurant china.
“ To promote high standards of business and to encourage research in the manufacture and use of restaurant china.
*637 ‘ ‘ To maintain free competitive relations among all members of the restaurant china dinnerware trade. The Association may not, directly or indirectly, restrain the freedom of any member in competition or in trade, control or fix and maintain sales prices, limit production or allot or apportion territory or business.
“ To meet and discuss various problems of common interest from time to time confronting the manufacturers of vitrified restaurant china.
‘ ‘ In furtherance of and not in limitation of the general powers conferred by the laws of the State of New York, and the objects and purposes herein set forth, it is expressly provided that this corporation shall also have the following powers, viz: —
‘1 Acting through its board of directors, its President and other officers, subject to the powers and restrictions of this certificate of incorporation, and its by-laws, to do all such acts as are necessary or convenient to the attainment of the objects and purposes herein set forth, and to the same extent and as fully as any natural person might or could do.
‘ ‘ To purchase, lease, hold, sell, mortgage or otherwise acquire or dispose of real or personal property; to enter into, make, perform or carry out contracts of every kind with any person, firm, corporation or association; to do any acts necessary or expedient for carrying on any and all of the activities and pursuing any and all of the objects and purposes set forth in this certificate of incorporation and not forbidden by the laws of the State of New York.
“ To have offices and promote and carry on its objects and purposes within or without the State of New York, in other States, the District of Columbia, the territories or colonies of the United States.
‘ ‘ In general, to have all powers conferred upon a corporation by the laws of the State of New York, except as herein prohibited, or forbidden by the by-laws of this corporation.”
None of the foregoing purposes gives the plaintiff the right to accept an assignment of a cause of action for the purpose of commencing suit on such assigned cause. Nevertheless, the complaint alleges two separate causes of action, one being for damages of $1,000,000 growing out of an alleged prima facie tort, and the other for a similar amount of damages growing out of negligence.
Not only do the purposes for which the plaintiff was organized under the Membership Corporations Law not include the power to accept an assignment of a cause of action for the purpose of commencing suit on it, but it appears that under *638 section 275 of the Penal Law, “ no corporation * * * shall * * * take an assignment of * * * any claim or demand with the intent * * * of bringing an action thereon. ’ ’ Section 275-a of the Penal Law has no applicability to the facts alleged in either cause of action set forth in the complaint in this case. The tenor of the complaint is to the effect that the alleged wrongful acts committed by the defendant caused damage to plaintiff’s assignors (not plaintiff) and that they occurred before the commencement of the action. Paragraph Fourth of the complaint, which is a part of each cause of action, specifically alleges ‘1 that * # * by instruments duly executed and acknowledged, the several member organizations aforesaid duly assigned to plaintiff their respective causes of action against the defendant growing out of the matters thereafter alleged.” Throughout the complaint, the allegations are to the effect that all the damages caused by defendant were suffered by “ plaintiff’s assignors It is obvious from the complaint that the “ plaintiff’s assignors ”, for whose benefit the action is being commenced, are manufacturing concerns engaged in business for profit, in competition with the defendant. “ Corporations cannot maintain actions on claims which, in violation of the Penal Law, are assigned to the corporation for the purpose of bringing suit thereon ” (Empire Management Corp. v. Russo, 81 N. Y. S. 2d 817, 819, citing Zindle v. Friedman’s Express, 258 App. Div. 636).
Although there is no allegation in the complaint stating the date when the “ plaintiff’s assignors ” became members of plaintiff corporation, it was obviously between June 11, 1957 (when plaintiff’s certificate of incorporation was filed in the Erie County Clerk’s office) and December 18, 1959, when the summons in this action is dated. During all of that time, section 275 of the Penal Law was in effect in its present form.
In view of those facts, the court is of the opinion that the assignments which plaintiff alleges as the basis for the causes of action set forth in the complaint were and are prohibited (cf. Hospital Credit Exch. v. Shapiro, 59 N. Y. S. 2d 812).
In view of the foregoing, the court is of the opinion that the plaintiff is not the real party in interest and that the actions should have been brought in the respective names of the alleged assignors (cf. Jurnas v. National City Bank, 190 Misc. 854; Civ. Prac. Act, § 210).
In addition to the foregoing, the alleged causes of action are for personal injuries as that term is defined in section 37-a of the General Construction Law. Said section reads: “ ‘ Per *639 sonal injury ’ includes libel, slander and malicious prosecution; also an assault, battery, false imprisonment, or other actionable injury to the person either of the plaintiff, or of another. ’ ’ Such claims may not be assigned (Personal Property Law, § 41, subd. 1, par. [1]).
In Riddle v. MacFadden (201 N. Y. 215, 218) the court stated that independently of any statutory definition: “it is well settled that an injury to the person within the meaning of the law does not necessarily involve the element of personal contact with the person complaining of the injury.” The action in the Biddle case was for an injunction and to recover damages for the unauthorized use of the plaintiff’s photograph for advertising purposes, in violation of a statute from which section 51 of the Civil Eights Law is derived. The court (pp. 218-219) described numerous causes of action, some of which have since been abolished, which are held to be personal injury actions, though no bodily injury is involved.
The historical meaning of the term “personal injury” is discussed in the opinion in Thompson v. Judy (169 F. 553 [C. C. A., 6th Cir., 1909]), in which the court held that a judgment for a false and malicious libel was not discharged in bankruptcy. The court said at pages 555-556: “It is true that in modern parlance the words ‘ personal injury ’ are often used to designate a physical injury to the party. But usually, when there is an attempt to put the matter into legal phraseology, these and equivalent words are understood to import the meaning in which they have long been used by recognized authorities, whether in legal text-books and commentaries or precise definition by courts, in classifying the rights of individuals. In 1 Blackstone’s Com. 129 et seq., the author classifies and distinguishes those rights which are annexed to the person, jura personarum, and acquired rights in external objects, jura rerum; and in the former he includes personal security, which consists ‘ in a person’s legal and uninterrupted enjoyment of his life, his limbs, his body, his health and his reputation ’. And he makes the corresponding classification of remedies. The idea expressed is that a man’s reputation is a part of himself, as his body and his limbs are, and that detraction of it is an injury to his personality, and Chancellor Kent in his twenty-fourth lecture shows that the same classification of rights was expressed in our colonial legislation and has always been observed”.
In Wade v. Kalbfleisch (58 N. Y. 282) the court held that an action for breach of promise to marry was an action for injury to the person and not an action on contract, The court said at *640 page 287: 1 ‘ Although, in form, this action resembles an action on contract, in substance it falls within the definition of the exception as an action on the case for personal injuries. * * * The form of the action is not material. The controlling consideration is, that it does not relate to property interests, but to personal injuries.”
The similarity between the causes of action enumerated in section 37-a of the General Construction Law, and the cause of action involved in the case of Riddle v. MacFadden (supra) with the causes of action contained in the complaint in the instant action, is striking. Applying the canons of statutory construction, noscitur a sociis (meaning it is known from its associates) and ejusdem generis (meaning of the same kind) as set forth in McKinney’s Consolidated Laws of New York (Book 1, Statutes, § 239) it appears clearly that the plaintiff’s alleged causes of action are based upon and within the meaning of the words “ other actionable injury to the person ” as those words are used in section 37-a of the General Construction Law.
Since the alleged causes of action set forth in the complaint are to recover damages for personal injuries, they could not be lawfully assigned to plaintiff, for such assignments are prohibited by subdivision 1 of section 41 of the Personal Property Law.
In view of all of the foregoing reasons, the motion is granted dismissing the complaint, and it is therefore unnecessary to pass upon any other questions.