David T. Gibbons, J.
By an indictment presented and filed on October 6, 1970 by the Nassau County Grand Jury, the defendants herein are charged with the commission of the crimes of purchasing of claims by corporations or collection agencies in violation of section 489 of the Judiciary Law under the first and second counts, and with conspiracy in the fourth degree to violate that statute under the third count.
On October 23, 1970, before entering a plea, the defendants filed a written demurrer herein, pursuant to subdivision 4 of section 323 of the Code of Criminal Procedure, demanding a dismissal of the indictment upon the ground “ that the facts stated in the indictment and in each constituent count, do not constitute a crime ”.
For the purpose of passing upon this demurrer, which will require a construction of section 489 of the Judiciary Law, all of the allegations of fact set forth in the indictment must be accepted as true. (People v. Decina, 2 N Y 2d 133, 139; People v. Sguillante, 12 Misc 2d 514.)
Under the first count of the indictment, it is alleged that (a) the defendant, Milton Berlin, individually, engaged directly and indirectly in the business of collection and adjustment of claims, and (b) the defendant, Landau Investors Corp., a domestic corporation, and (c) Milton Berlin, as an officer thereof, each aiding and abetting the other, “ purchased a judgment from one Abalene Oil Co., Inc., with the intent and for the purpose of bringing an action and proceeding thereon ’ ’.
The second count of the indictment, in like language, alleged that (a) the defendant, Milton Berlin, individually, engaged directly and indirectly in the business of collection and adjustment of claims, and (b) Midas Collections Inc., a domestic corporation, and (c) Milton Berlin, as an officer thereof, each aiding and abetting the other, ‘1 purchased a judgment from one Bonwit Teller, a division of Geneseo, Inc., with the intent and for the purpose of bringing an action and proceeding thereon ”.
In charging the crime of conspiracy in the fourth degree, it is alleged in the third count of the indictment that (a) the defendant, Milton Berlin, individually, engaged directly and indirectly in the business of collection and adjustment of claims, and (b) Landau Investors Corp., and (c) Midas Collections, Inc., and (d) said Milton Berlin as an officer of said domestic corporations, each aiding and abetting the other, and with intent to violate the provisions of section 4891 of the Judiciary Law, “ purchased judgments with the intent -and for the purpose of bringing an action and proceeding, each of them, and each aiding and abetting the other, in order to effect a foreclosure action *247 commenced by Salvo Realty Corp., a corporation organized and existing under the laws of the State of New York, Milton Berlin being an officer of said corporation, against property described as Section 46, Block 284, Lot 51 on the Land and Tax Maps of the County of Nassau, located at 23 Reiter Avenue, Hicksville, County of Nassau, State of New York, owned by one, Melvin Rosenkrantz. ”
To prevent the resulting strife, discord and harassment which would result from permitting attorneys to purchase claims for the purpose of bringing actions thereon, the State of New York, early in its history, formulated a public policy declaring the practice of champerty and maintenance to be illegal. By a series of enactments this public policy was eventually expressed in section 274 of the former Penal Law.
A similar public policy was developed by the passage of a series of enactments to prohibit a person or partnership engaged in the business of collection of claims, or a corporation from engaging in such champertous practices by purchasing claims for the purpose of bringing legal actions thereon and the same ultimately found expression in section 275 of the former Penal Law.
With the repeal of the former Penal Law in 1967, these two statutes were relocated and placed in article 15 of the Judiciary Law under the heading, “Attorneys and Counsellors ”, as sections 488 and 489, respectively.
The underlying legislative purposes of these two statutes are, as expressed in Transbel Inv. Co. v. Roth (36 F. Supp. 396, 398) as follows: “ Sections 274 and 275 of the New York State Penal Law, Consol. Laws, c. 40, are intended to aid in the enforcement of time-honored public policies. Section 274 forbids an attorney to purchase a note with the present intention to sue. Section 275 forbids a corporation to do substantially the same thing. An act is contrary to the public policy of New York when it contravenes a rule of conduct long held to involve and uphold the interests of the society that composes- this State. Lauria v. E. I. DuPont, D. C. 241 F. 687. The prohibition of champertous agreements, which § 274 of the Penal Law aims to extend, and that against all phases of real or implied conduct of the practice of law by corporations, wherein § 275 of the same law finds its genesis, are both founded on a public interest, the control of the conduct of attorneys as officers of the courts, and of corporations which are created by the state to carry on business — a beneficent design — and not to conduct litigation as a distinct purpose.”
*248 A close examination of section 489 of the Judiciary ■ Law reveals that it is structured into two distinct parts, each reflecting a concern with two different public policies of the State which it seeks to effectuate.
It first leads with the following proscriptive language forbidding certain acts constituting champerty and maintenance in consonance with the above-mentioned legislative purposes: “No person or co-partnership, engaged directly or indirectly in the business of collection and adjustment of claims, and no corporation or association, directly or indirectly, itself or by or through its officers, agents or employees, shall solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon ”.
This is followed by an exception in permissive language which, in furtherance of the State’s public policy to encourage and facilitate the expeditious liquidation and final settlement of the various listed estates, allows the solicitation, purchase and assignment of certain listed assets, as follows: “ ; provided, however, that bills receivable, notes receivable, bills of exchange, judgments or other things in action may be solicited, bought or assignment thereof taken, from any executor, administrator, assignee for the benefit of creditors, trustee or receiver in bankruptcy, or any other person or persons in charge of the administration, settlement or compromise «of any estate, through court actions, proceedings or otherwise. Nothing herein contained shall affect any assignment heretofore or hereafter taken by any moneyed corporation authorized to do business in the state of New York, or its nominee pursuant to a subrogation agreement or a salvage operation, or by any corporation organized for religious, benevolent or charitable purposes ”.
“ Any corporation or association violating the provisions of this section shall be liable to a fine of not more than five thousand dollars; any person or co-partnership, violating the provisions of this section, and any officer, trustee, director, agent or employee of any person, co-partnership, corporation or association violating this section, who, directly or indirectly, engages or assists in such violation, is guilty of a misdemeanor ’ ’.
The People contend that a judgment is included within the phrase “ or other thing in action ”, which is found in the first part of said section 489 of the Judiciary Law and for that reason the allegations in the indictment that the defendant “ pur *249 chased a judgment * s * with intent and for the purpose of bringing an action and proceeding thereon is legally sufficient to allege the commission of a crime under this section ”. The defendants on the other hand, refute this construction and argue that a judgment was not intended to be included in the phrase, 44 or other thing in action
Words of similar import contained in section 73 of the Code of Civil Procedure, the forerunner of section 488 of the Judiciary Law, were construed in 1886, in Fay v. Hebbard '(42 Hun 490, 492-493) as follows: 44 There is nothing in this to prevent an attorney or counsellor from buying anything named in the act for any other intent, use or purpose than that of bringing an action thereon. If an attorney or counsellor buy a judgment with intent to sue the judgment debtor thereon, we think it would be deemed ‘ a thing in action ’ within the meaning of the provision. It would be within the spirit of the law and the mischief to be prevented, but it is quite another thing to buy a judgment with the intent to enforce it by execution against the judgment debtor, or by pursuing the lien it may have on his property in his own or another’s hands.”
Essentially, the words £< or other thing in action ” were construed not to include a judgment where it was purchased by an attorney for the purpose of enforcing its collection or pursuing its lien, as for example, under proceedings for the enforcement of judgments under CPLR 5201 et seq. It would, however, appear from Fay v. Hebbard {supra), that a judgment so purchased for the purpose of instituting an action thereon under CPLR 5014, is such 4 4 other thing in action ’ ’ which, within the meaning and intent of the statute, is the subject matter of a forbidden transaction.
Section 489 of the Judiciary Law, under consideration herein, and section 488 of the Judiciary Law involve the State’s public policy against champertons transactions. They contain substantially the same phraseology and were grouped together in the same enactment and are to be considered to be in pari materia. The interpretation of section 488 of the Judiciary Law, as expressed in Fay v. Hebbard (supra) may be resorted to in construing the terms of its kindred statute, section 489 of the Judiciary Law, as an analogous enactment. (People v. Rogers, 183 App. Div. 604; Morris Plan Ind. Bank of N. Y. v. Gunning, 295 N. Y. 324; see McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 221 et seq.)
It was within the contemplation of the Legislature that the term ‘4 or other thing in action ’ ’ should be construed in the same manner, in both statutes; and it is, therefore, the deter- *250 ruination of this court that, under the circumstances contem- ■ plated under section 489 of the Judiciary Law, where a judgment is purchased by a person or partnership engaged in the business of collection and adjustment of claims, or by a corporation to effect its collection or to pursue its lien, it is not to be construed as such “ other thing in action ” which is forbidden to be done by the statute. If, however, it is purchased under the circumstances contemplated by section 489 of the Judiciary Law for the purpose of instituting an action thereon, it is then within the orbit of those transactions forbidden by it to be done.
Thus, until such time as the court is apprised of the nature of the testimony and proofs, casting light upon the intent and the purpose for which the said judgments were obtained, no determination can be made with respect to the legality of the transactions.
Accordingly, the defendants’ demurrer is hereby disallowed in all respects for the reason that as a pleading the indictment is valid and legally sufficient.
It is, therefore, ordered, that the defendants’ demurrer to the indictment herein is hereby disallowed in all respects and the defendants are directed to appear with their counsel before this court at Special Term, Part I thereof, on the 12th day of January, 1971, to plead to the indictment herein. (Code Crim. Pro., § 330.)