**AMERICAN OPTICAL COMPANY,**
**Plaintiff,**

v.

**Lawrence F. CURTISS et al., Defendants.**

**No. 65 Civ. 627.**

United States District Court,
S. D. New York.

Dec. 4, 1971.

Morton Amster, New York City, for plaintiff.

Fish & Neave, New York City, for defendants.

## MEMORANDUM AND ORDER

RYAN District Judge.

Defendants move for summary judgment under Rule 56, F.R.Civ.P., on the ground that plaintiff is not the real party in interest. [Rule 17(a), F.R.Civ.P.]

Defendants contend that plaintiff's only right to maintain this action is derived from an assignment which was illegal and void under Michigan Law and under Section 275 of the New York Penal Law, McKinney's Consol.Laws, c. 40. I have concluded to grant defendants' motion unless the University of Michigan ("the University"), the real party in interest, is joined or substituted as the party plaintiff.

This is an action to compel assignment of two patents.[1] Jurisdiction is based upon diversity of citizenship with the amount in controversy exceeding $10,000.00. When the action was filed (March 2, 1965), plaintiff American Optical Company ("A.O.") was a voluntary association existing under the laws of the Commonwealth of Massachusetts.[2]

Defendants are three individuals who worked together at the University during the years 1955 through 1957, and American Cystoscope Makers, Inc., to which the individual defendants assigned certain patents. During that period while working at the University, the individual defendants developed certain inventions. In December, 1956, defendant Hirschowitz filed a patent application on an invention developed by him while at the University, and on November 28, 1961, a patent issued to him on this invention. In May, 1957, defendant Curtiss, while an undergraduate at the University, filed a patent application on an invention developed during his University research, and on June 29, 1971, a patent issued to him on this application.

During the spring of 1957, Hirschowitz, Curtiss and Peters entered into an agreement to share equally any financial benefits received from the pending patent applications. In December, 1957, they granted an exclusive license to "American Cystoscope" for the inventions covered by the Hirschowitz and Curtiss applications.

---

1. When the suit was filed, an application was pending for one of the patents. Subsequently, that patent was issued.

2. In 1967, after the suit was filed, plaintiff was acquired by the Warner-Lambert Company.

In September, 1962, the patent office declared an interference proceeding to determine priority of invention between the CURTISS' patent application and an application submitted by Frederick H. Norton, who had assigned his invention to plaintiff A.O. which, as assignee, was a party to this interference proceeding. Later on July 16, 1963, it moved to dissolve the interference on the ground that the Curtiss and Norton inventions were unpatentable. On January 23, 1964, A.O.'s motion to dissolve was denied.

Until 1964, the University was not aware that the individual defendants had filed patent applications based on work performed by them while at the University. The University was disturbed by this discovery, since according to the University's By-Laws, unless specifically exempted, all patents issued in connection with University research projects belong to the University. The University had not authorized or consented to the filing of patent applications by Hirschowitz or Curtiss.

On August 14, 1964, while the Curtiss-Norton patent interference was pending, attorneys representing A.O. met in Michigan with personnel and an attorney representing the University. At this meeting, an A.O. attorney suggested, that if the University were willing to dedicate to the public any patents which might arise from the Norton-Curtiss interference, A.O. would be willing to either pay the expenses of a suit by the University to acquire title to the Hirschowitz patent and the Curtiss application, or A.O. would accept an assignment of the University's rights for the purpose of bringing such a suit.[3]

On August 25, 1964, an A.O. attorney again informed an attorney for the University that, if the University were prepared to institute litigation to compel an assignment to the University of the Hir-schowitz patent and the Curtiss application, A.O. would be willing to pay reasonable counsel fees with the overall understanding that the subject matter of the aforesaid interference would be dedicated to the public. A.O.'s attorney also stated that, if this were not feasible, due to the University's policy, A.O. would consider accepting an assignment of the University's rights.

On December 17, 1964, A.O.'s attorney transmitted to the University's attorney a draft of a proposed agreement between the University and A.O. An agreement identical in language to that proposed by A.O. was executed in Massachusetts by A.O. on February 9, 1965, and on February 11, 1965, was signed in Michigan by representatives of the Regents of the University. Hereinafter this is referred to as "the Agreement".

The Agreement recited that defendants Curtiss, Peters and Hirschowitz, while employed by the University and while using the monies and facilities of the University, had worked on the development of a fiber optics gastroscope which resulted in the filing and issuance of the Hirschowitz patent and the Curtiss application; that in furtherance of the University policy, any and all inventions which are developed with the funds and facilities of the University by those hired to work on, develop and perfect such inventions, are the property of the University; that the University desired to have the inventions made available and dedicated to the public on a royalty free basis; and that A.O. likewise desired to have said inventions made available to and dedicated to the public.

It was against this background and further provisions of the Agreement that, on March 2, 1965, A.O. commenced this action, seeking to require defendants to assign to plaintiff, as successor in interest of the University all right, title and interest in the Hirschowitz pat-

---

3. Apparently, A. O. is a competitor of American Cystoscope and was interested in utilizing the Hirschowitz and Curtiss inventions without the payment of royalties.

ent and the Curtiss application and any and all patents and rights derived therefrom. The complaint also asked that defendant American Cystoscope be required to deliver up for destruction all license agreements relating to the Hirschowitz patent and the Curtiss application.

The complaint alleged that the individual defendants, without the authorization or consent of the University, filed patent applications for inventions based upon work performed by them while employed by the University. The complaint further alleged that the individual defendants have acted in violation and total disregard of the by-laws of the University by filing said application and obtaining said patent and that said applications and patent were and are the property of the University.[4]

Plaintiff's alleged right of action against defendants is based entirely on the fact that it is the successor in interest to the rights asserted by the University. Plaintiff's alleged right of action stems solely from the Agreement which it entered into with the University.

I have noted above that defendants move for summary judgment under Rule 17(a), F.R.Civ.P., on the ground that plaintiff is not "the real party in interest" since the Agreement is illegal and void because it violates Michigan law and Section 275 of the New York Penal Law, which prohibits assignment of claims to corporations for the purpose of bringing suit thereon.[5]

Whether a party is a real party in interest as required by Rule 17(a) F. R.Civ.P., is to be determined by the substantive law of the forum state. Dubuque Stone Products Co. v. Fred L. Gray Co., 356 F.2d 718, 723 (C.A. 8, 1966); Kenrich Corporation v. Miller, 256 F.Supp. 15 (E.D., Pa., 1966) aff'd 377 F.2d 312 (C.A. 3, 1967). We must look to New York law to determine whether plaintiff's assignment is valid, and must apply New York conflicts of laws rules to determine what state substantive law governs the validity of the Agreement. [Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945; D'Ippolito v. Cities Service Co., 374 F.2d 643 (C.A. 2, 1967).]

The Michigan law would govern the validity of the assignment Agreement; the Agreement was executed in Michigan; the parties were a Massachusetts association and a Michigan Constitutional corporation; and the negotiations leading up to the Agreement took place in Michigan. Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99 (1954); Intercontinental Planning Ltd. v. Daystrom, Inc., 24 N.Y.2d 372, 382, 300 N.Y.S.2d 817, 248 N.E.2d 576.

However, we need not concern ourselves with the validity of the Agreement under Michigan law, since the Agreement, on its face, is contrary to

---

4. As set forth in the complaint, the by-laws of the University provide, inter alia, "unless otherwise specifically provided by action of the Board of Regents or by contract entered into under authorization of the Board, patents issued in connection with research projects and all royalties or profits derived therefrom shall belong to the University."

5. Section 275 of the New York Penal Law, entitled "Purchase of Claims by Corporations or Collection Agencies", provided that "no corporation or association directly, itself, or by or from its officers, agents or employees, shall solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a . . . thing or action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon . . . ". This provision was recodified in 1967 as Section 489 of the New York Judiciary Law, McKinney's Consol.Laws, c. 30, which also provides that "no corporation or association, directly or indirectly, itself or by or through its officers, agents or employees, shall solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of . . . any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon."

the public policy of New York.[6] Plaintiff should not be permitted to sue in this Court on a diversity cause of action which is derived from an Agreement which would not be enforced by New York courts. The Agreement provides that the University assigned and transferred to A.O. all of its right, title and interest in the Hirschowitz patent and the Curtiss application upon the condition that A.O. would bring suit against at least one of the individual defendants. Section 275 of the New York Penal Law specifically prohibits a corporation from taking an assignment of a claim for the purpose of bringing suit thereon. [Bennett ex rel. New York County Lawyers' Ass'n v. Supreme Enforcement Corporation, 275 N.Y. 502, 11 N.E.2d 315 (1937); American Restaurant China Mfrs. Ass'n v. Corning Glass Works, 24 Misc.2d 634, 198 N.Y.S.2d 366 (Sup.Ct. Erie County, 1960); People v. Berlin, 65 Misc.2d 245, 317 N.Y.S.2d 191 (Sup.Ct., Nassau County, 1971).]

In Empire Management Corporation v. Russo, 81 N.Y.S.2d 817 (Sup.Ct. New York County, 1948), it was held that:

> "Corporations cannot maintain actions on claims which, in violation of the Penal Law, are assigned to the corporation for the purpose of bringing suit thereon, [Frank H.] Zindle, Inc., v. Friedman's Express, Inc., 258 App. Div. 636, 17 N.Y.S.2d 594."

In American Restaurant China Mfrs. Ass'n v. Corning Glass Works, *supra,* the Court wrote:

> ". . . under § 275 of the Penal Law, 'no corporation . . . shall . . . take an assignment of . . . any claim or demand, with the intent . . . of bringing an action or proceeding thereon' . . .

throughout the complaint, the allegations are to the effect that all the damages caused by defendants were suffered by 'plaintiff's assignors' . . . .

"In view of those facts, the court is of the opinion that the assignments which plaintiff alleges as the basis for the causes of action set forth in the complaint were and are prohibited (cf. Hospital Credit Exchange, Inc. v. Shapiro, City Court of N.Y.1946, 186 Misc. 629, [658] 59 N.Y.S.2d 812)."

"In view of the foregoing, the court is of the opinion that the plaintiff is not the real party in interest and that the actions should have been brought in the respective names of the alleged assignors. (Jurnas v. National City Bank, 190 Misc. 854, 76 N.Y.S.2d 330)."

It is true that the Agreement would not have been illegal under New York law if the University owned a patent[7] and had made an absolute assignment of it to A.O., without conditioning the assignment upon the commencement of a suit by A.O. [Chester H. Roth, Inc. v. Esquire, Inc., 186 F.2d 11 (C.A.2, 1950); Rosemont Enterprises, Inc. v. Random House, Inc., 256 F.Supp. 55 (S.D.N.Y., 1966) rev'd on other grounds, 366 F.2d 303 (C.A.2, 1966); Welch v. Coro, 97 F.Supp. 185 (S.D.N.Y., 1955).] Here, however, the assignment Agreement between the University and A.O. provided for and required A.O. to bring a law suit. Indeed, the Agreement appears to have been a contrivance solicited by A.O. to enable it to bring suit on behalf of the University, and the proposed suit was the very purpose and substance of the Agreement. A.O.'s intent to sue was not merely incidental and contingent [Broder v. Brasselle, 7

---

6. The Agreement may, however, be illegal also under Michigan law. See Mich.Con. Laws Anno. Secs. 450.681; 15 Mich.Stat. Anno. Sec. 21.311.

7. The University, however, was not the owner of a patent nor had it filed an application for a patent. The University merely assigned to A. O. a claim that it (the University) should be declared to be the owner of said applications and patent in place of the individuals who had filed the applications.

Misc.2d 13, 164 N.Y.S.2d 142 (Sup.Ct., New York County, 1957)]. It is clear that A.O. took the assignment "with the intent and for the purpose of bringing an action or proceeding thereon . . .".

■■■■ Nor, can it be argued that Section 275 of the New York Penal Law (Section 489 of the New York Judiciary Law) applies only to situations where the assignee does not receive title to the assigned claim but only sues on behalf of the assignor and remits all sums received, less an amount for his services. Such a situation is covered by Section 495 of the New York Judiciary Law (formerly Section 280 of the New York Penal Law) which provides that "no corporation or voluntary association . . . shall take an assignment thereof, for the purpose of representing any person in the pursuit of any civil remedy." Section 275 of the Penal Law (Section 489 of the Judiciary Law) goes beyond this situation and prohibits the taking of an assignment by a corporation with the intent to sue thereon, regardless of whether the claim is structured to appear to belong to the corporation or to the assignor.[8] Indeed, in interpreting Section 275, the cases have not made this distinction, but have applied this section to situations where a full transfer was made to a corporation, Empire Management Corp. v. Russo, *supra*; People v. Berlin, *supra*.[9]

Here, the assignee was involved in the transactions which are the basis for the suit. [American Hemisphere Marine Agencies, Inc. v. Kreis, 40 Misc.2d 1090, 244 N.Y.S.2d 602 (Sup.Ct., N.Y., 1963); Moran Towing & Transportation Co. v. Conners-Standard Marine Corporation, 226 F.Supp. 1013 (S.D.N.Y., 1963).] Rather, A.O. had nothing to do with the relationships between the individual defendants and the University, which form the basis for the instant complaint. The assignment was merely a means to enable A.O. to sue on behalf of the University and, as such, it contravenes Section 275 (Section 489) and the public policy of New York. Accordingly, even if the Agreement were legal under the laws of Michigan, the courts of New York would not enforce it as being contrary to the public policy of New York.

There is no indication that the prevailing social and moral attitudes of the New York community have changed so as to countenance assignments to a corporation which are expressly contrived so as to enable the corporation to sue on the basis of the assigned rights [Intercontinental Hotels Corp. (P.R.) v. Golden, 15 N.Y.2d 9, 254 N.Y.S.2d 527, 203 N.E.2d 210 (1964)]. Rather, New York has constantly broadened the coverage of Sections 275 and 280 of the Penal Law. [Watertown Bus. Ass'n v. Green, 120 Misc. 509, 198 N.Y.S. 871 (1923), aff'd 208 App.Div. 832, 203 N.Y.S. 958; Con-

---

8. A. O. asserts, however, that these New York statutes should be interpreted as general champerty provisions and that plaintiff is clearly not engaged in champerty which consists of "an agreement whereby a person without interest in another's suit undertakes to carry it on at its own expense, in whole or in part, in consideration of receiving, in the event of success, a part of the proceeds of the litigation." 14 C.J.S. Champerty and Maintenance § 1, page 356. I read Section 275 (489 of the Judiciary Law) as a special statutory provision which is more stringent than the common law champerty provisions. See 14 C.J.S. Champerty and Maintenance § 8, page 360.

9. Furthermore, the assignment does not come within Section 275a of the New York Penal Law (490 of the Judiciary Law), which provides that Section 275 (489 of the Judiciary Law) does not prohibit the "receipt of a . . . thing in action, in payment for property sold, or for services actually rendered, or for a debt antecedently contracted." This Section refers to property already sold and plaintiff cannot assert that its Agreement to commence a law suit is payment for the sale of property (e. g., the University's rights in the Hirschowitz and Curtiss inventions).

tinental Purchasing Co., Inc. v. Appel, 24 N.Y.S.2d 4 (N.Y.C.Municip.Ct., 1940); Pan Amer. Securities Corp. v. Fried, etc., 169 Misc. 445, 6 N.Y.S.2d 993 (Sup.Ct., Kings County, 1938), aff'd 256 App.Div. 955, 10 N.Y.S.2d 205 (1939).] As recently as 1967, the New York Legislature recodified these sections by reenacting them as Sections 489 and 495 of the Judiciary Law. Therefore, under New York Law, the Agreement would be considered to be immoral and contrary to public policy [Loucks v. Standard Oil Co., 224 N.Y. 99, 111, 120 N.E. 198 (1918)].

Nor, does the recent decision in Gonzalez v. Barredo v. Schenck, 428 F.2d 971 (C.A.2, 1970) change this determination. In that case, the Court stated at page 981 that New York courts might "decline affirmative enforcement to the offending portion of the contingent fee agreement; for example, they might reject a suit . . . to compel the lawyer to advance expenses." Here, plaintiff A.O., by suing in New York, is accomplishing the very act which New York policy prohibits. Namely, A.O. has brought a suit based upon a claim which was expressly assigned to it so that it could sue in place of the assignor. In other words, this is not a suit between the parties to the Agreement to enforce a part of said Agreement, such as the transfer of asserted property rights, which does not violate New York policy. Rather, the question here is whether A.O. would be permitted by the New York courts to bring suit in New York, where its rights are derived from an assignment which was solicited by it and contrived to enable it to bring suit in place of the assignor. The University, not wishing to sue to enforce its rights, executed an assignment to A.O. so that it would sue in place of the University. The very substance and purpose of the Agreement was to permit A.O. to bring suit. This seems to be the very situation prohibited by Section 275 of the Penal Law. The New York courts would

permit A.O. to carry out in New York the "offending portion" of the Agreement.

I conclude that A.O. is not the "real party in interest", pursuant to Rule 17(a), F.R.Civ.P. The defendants' motion for summary judgment is granted and the complaint will be dismissed with costs unless, within 10 days from the date hereof, the University is joined or substituted as party plaintiff, as provided for by Rule 17(a), F.R.Civ.P.

So ordered.