Edwin R Lynde, J.
The petitioner, Herbert R Lee and Mary Lee, his wife, own as tenants by the entirety, property known as and by No. 16 Silver Lane, Levittown, New York; title vested in them by deed dated January 6, 1954 and duly recorded in the Nassau County Clerk’s office on January 11, 1954.
The respondent, Community Capital Corporation, is the assignee of a judgment recovered against the petitioner, Herbert R Lee, in the Nassau District Court on January 27, 1956. The assignment to respondent was recorded in the Nassau County Clerk’s office on January 18, 1966.
The petitioners’ original application sought relief pursuant to CPLB 5239 for an order vacating an execution and levy against the interests of the petitioners and/or, in the alternative, for a protective order staying the Sheriff’s sale and directing installment payments pursuant to CPLB 5240.
The decision of this court dated June 22, 1970 granted the relief requested pursuant to CPLB 5240. The Sheriff’s sale was stayed upon the condition that the judgment debtor make payments of $15 per week until the judgment plus interest was paid in full.
The primary relief requested, vacating the execution and levy pursuant to CPLB 5239, was denied as being without merit. The court’s conclusion was based on a technical interpretation of the correctness of the procedure employed by the respondent concerning the assignment, levy and execution, as gleaned from the information contained in the original papers before the court.
In the original papers, an unsupported allegation was made that the assignment of the judgment to the respondent corporation was on a contingent basis; this was not denied by the respondent.
The affirmation of respondent’s attorney, submitted in opposition to the motion to reargue, by the following language, supports the conclusion that the assignment was not properly consummated by a definite quid pro quo but effected on a contingent basis: ‘ ‘ That the assignment taken by the respondent, Community Capital Corporation, was merely taken for the purpose of facilitating the execution of the judgment. That I have been advised that no money has passed between the assignor and the assignee, and the said respondent, Community Capital Corporation, has in no way violated Section 489 of the Judiciary Law.” *701 tion, has in no way violated Section 489 of the Judiciary Law.”
Section 489 of the Judiciary Law, in pertinent part, states as follows: “no corporation or association, directly or indirectly, itself or by or through its officers, agents or employees, shall solicit, buy or take an assigmment of, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon”.
It is a well-settled general rule that a person or a corporation cannot maintain an action if, in order to establish the cause of action, there exists reliance in whole or in part on an illegal act or transaction to which he or it is a party.
Section 489 of the Judiciary Law is penal in nature, and manifests this State’s public policy prohibiting such practices, and hence classifies all such transactions as void aside from the penal sanctions imposed. It is a clearly established legal principle that the law will not permit a person or a corporation to take advantage of or acquire a right of action from his or its own unlawful act or wrong; a party to an illegal or immoral act or transaction cannot base a cause of action on such act or transaction, and this court will not lend its aid or grant relief to a party whose cause of action is predicated on such an act or transaction. The court, on its own initiative, based on the history of this transaction, raises the question of illegality of its own motion, and is reluctant to extend relief to a party that in effect is violating public policy.
As Mr. Justice Gulotta of this court succinctly and pointedly indicated (58 Misc 2d 34), involving the same parties to this proceeding in a similar sale, the CPLR terminates the debtor’s right of redemption, making it imperative that sales of this type be closely scrutinized. (See 6 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5236.02.)
Contrary to expectations, the legislative intent in abolishing the right of redemption has not consistently led to fair sales at full value but a practice of purchasing judgments for the sole purpose of levy and execution against real property.
In Nassau County the real property generally involves personal residences of small debtors, the assignees invariably selling the debtor’s home at public auction for a fraction of the market value. This pattern has evolved into a practice reaching alarming proportions in Nassau and Suffolk Counties; and this court, by the present decision, hopes to terminate such practice, to prevent the perpetuation of this injustice until the Legislature reviews the manifest inequities resulting from this practice.
*702 This court initially attempted to ameliorate the harsh consequences of a sale by the technical application of CPLR 5236, by staying and/or canceling the sale pursuant to CPLR 5240. However, circumvention fails to eradicate the injustice that results from the technical utilization of CPLR 5236 in the pattern of exploitation revealed by the factual circumstances of the present case.
Ordinarily, the unfortunate victim, through the services of competent counsel, could also resort to CPLR 317 to open a default, on the procedural authority of CPLR 5015 (subd. [a]); however, invariably the victim’s predicament resulted from a lack of sophistication and diligence jn utilizing the aid of counsel; consequently the procedural machinery of the CPLR remains dormant to them and beyond their pragmatic grasp.
In any event, the need for circuity should be eliminated by a revision of CPLB 5236 to afford ample safeguards to prevent the legal chicanery and unjust forfeitures which result from such sales.
Legislative research, evaluation and revision must be implemented to curtail the injustices to judgment debtors involving the levy and execution and abolition of the right of redemption against real property constituting their personal residences; this notwithstanding the available remedies afforded by the CPLR, the discernment and implementation of which are predicated upon an erudite strata of legal knowledge and expertise.
It is conceded that a judgment debtor who becomes involved in a predicament such as the type before the court is not entirely blameless and free of responsibility in asserting the necessary legal procedures to protect his rights. Invariably, the underlying liability is founded upon a legitimate obligation, and he has been afforded the technical application of due process. His socio-economic status, however, has failed to provide him with the sophistication necessary to comprehend and implement the procedural mechanics of the law. He is thus beset by apathy, indifference and fear until confronted with the unyielding legality of the sale of his personal residence. The pattern of facts in the proceeding before the court graphically illustrates the unfortunate evolution of events and the unjust conclusion that may result. The real property involved has a value in excess of $20,000; it is encumbered by a mortgage of approximately $5,000; the underlying debt, which is the catalyst that eventually wipes out this hard-earned equity by cutting off the right of redemption, amounted to no more than several hundred dollars.
The question that persistently lingers before the court is how to protect the uninitiated against the professional “ collector” *703 who has cloaked himself within the protective garb of superficial due process and exploited an unfortunate set of circumstances to reap a windfall by application of the law with technical precision. The courts can avoid and prevent such exploitation by a ruling similar to the type employed herein. This decision, however, is of no consequence and negligible consolation to those individuals who are victims of such a reprehensible practice because for one reason or another they have not availed themselves of their 1‘ enlightened day in court. ’ ’
The function of “ due process” in terms of contemporary relevance must be reshaped and rehoned to meet the urgency and accelerated pace of contemporary change.
In that connection, the Attorney-General ’ s office of this State is constantly alert in revising its control over consumer problems to protect the purchasing rights of the individual consumer. A public defender system has been set up at county expense to protect the rights of the indigent accused of a crime. In the spirit of such contemporary anxiety over individual rights and consumer concern, the Legislature must seek a solution by the creation of the necessary statutory safeguards to permit the Attorney-General’s office to intervene as a necessary party to such proceedings to assure a full measure of compliance with due process to the victims involved in the outcome of a CPLB, 5236 sale of real property.
By the present decision, this court is attempting to invalidate the assignment, without consideration and on a contingent basis, of these judgments to a professional collector. This may prohibit the practice of consummating assignments of these judgments on a contingent basis. This, however, does not prevent an assignment of these judgments for a nominal consideration, which may circumvent the proscription of the import of this decision. In order to avoid a CPLB 5236 sale of real property by the professional collector, the Legislature should, in effect, prohibit a CPLB 5236 sale by an assignee of such judgments. This practice has evolved because of the reluctance of reputable firms, department stores, and professional individuals who, although they reduce a legitimate obligation to judgment, are unwilling to resort to a CPLB 5236 sale of real property because of the adverse publicity that may result. This reluctance, in effect, has given birth to the professional collector who takes the assignment on a contingent basis and proceeds to institute the necessary procedure to consummate a QPLB 5236 sale of real property as illustrated in the history of this case.
It is the conclusion and direction of this court that the sale and underlying levy be vacated and the decision of this court *704 dated June 22, 1970 be vacated in its entirety, with a further direction that any and all financial installments paid thereunder be refunded to the judgment debtor accordingly.