POLORON PRODUCTS, INC. (with substitution applied for by Dynamark Corporation, assignee), Plaintiff-Appellant,

v.

LYBRAND ROSS BROS. & MONTGOMERY, Defendant and Third-Party Plaintiff-Appellee,

v.

POLORON PRODUCTS OF INDIANA, INC., et al., Third-Party Defendants.

No. 178, Docket 75–7271.

United States Court of Appeals, Second Circuit.

Argued Dec. 10, 1975.

Decided April 5, 1976.

As Modified on Denial of Rehearing May 18, 1976.

Martin R. Gold, New York City (Charles B. Ortner, Gold, Farrell & Marks, New York City, of counsel), for plaintiff-appellant and third-party defendant Dynamark Corp.

William M. Barron, New York City (Powell Pierpoint, Hughes Hubbard & Reed, New York City, of counsel), for defendant-appellee.

Before OAKES, VAN GRAAFEILAND and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

Poloron Products, Inc. ("Poloron") appeals from an order of the United States District Court for the Southern District of New York, Conner, J., dismissing its amended complaint on the ground that two prior voluntary dismissals of the action by the plaintiff in the present action had the effect of a dismissal on the merits. The district court's opinion is reported at 66 F.R.D. 610 (S.D.N.Y.1975). The district court held that the instant suit was barred

by the doctrine of *res judicata* because of the so-called "two dismissal" rule set forth in Rule 41(a)(1), Fed.R.Civ.P., quoted *infra.*

Before deciding the merits of the appeal we must first decide if it is properly before us. The right to pursue the appeal was assigned to Dynamark Corporation ("Dynamark") by Poloron shortly after the district court had dismissed the complaint and shortly after Poloron had settled all its claims against the defendant, Lybrand Ross Bros. & Montgomery ("Lybrand"). Lybrand contends that the assignment is champertous and therefore invalid under New York law and that because Poloron is no longer a party the appeal is moot. On the merits of the appeal Lybrand claims that even if the "two dismissal" rule does not create a *res judicata* bar, a result which it certainly does not concede, the complaint was properly dismissed in any event since the allegations contained therein failed to state a cause of action.

This case arises from the 1967 sale of the Levitt Manufacturing Company ("LMC") by its owners, Carl and Jay Levitt, to Poloron. Lybrand, a public accounting firm, prepared LMC's balance sheet, upon which a major term of the sale depended. The Levitts gave Poloron their personal guarantees of the balance sheet's accuracy. After the sale, Poloron caused LMC's name to be changed to Poloron Products of Indiana, Inc. ("Poloron-Indiana"). Later Poloron's own accountants discovered that LMC's assets apparently had been substantially overstated. When Poloron learned of this, it caused Poloron-Indiana to withhold certain payments due Dynamark under a sales representative agreement which LMC had entered into with Dynamark, a corporation wholly owned by the Levitts.

*First Suit*

In May, 1970, the Levitts and Dynamark initiated an action against Poloron-Indiana in the United States District Court for the Northern District of Indiana to recover the sales commissions they claimed had been withheld improperly. In September, 1970, they amended their complaint to add Lyb-

rand as a defendant on the theory that the losses were ultimately the result of the false balance sheet prepared by Lybrand. Dynamark alleged that Lybrand's false statements in the balance sheet constituted a violation of Section 10(b) of the Securities Exchange Act of 1934. On Poloron-Indiana's motion the action was then transferred to the Southern District of New York in November, 1970. Subsequently, the Levitts and Dynamark served and filed an amended complaint realleging the claims against Lybrand and adding Poloron, the parent corporation and a party to the sale, as a defendant. Later, Poloron and Samuel Levitt agreed that the losses which they had both sustained were principally the result of Lybrand's false financial statements. They agreed to terminate the pending litigation and assign all of their rights to damages to Poloron, which would pursue the action alone against Lybrand only. The settlement agreement provided that Dynamark would bear seventy-five percent of the costs of litigation and enjoy the same percentage of any recovery. The agreement further provided that under certain conditions Poloron would be required to reassign its entire claim back to Dynamark upon the latter's demand. Apparently, Lybrand was not made aware of the terms of the settlement agreement. On July 7, 1971, a stipulation of discontinuance, signed by all parties, was filed in the district court.

*Second Suit*

Thereafter, on December 30, 1974, pursuant to the earlier settlement agreement, Poloron brought an action against Lybrand in the United States District Court for the Northern District of Illinois. The allegations against Lybrand were substantially similar to those charged against it in the first suit. On January 26, 1972, however, the United States Court of Appeals for the Seventh Circuit announced its decision in *Parrent v. Midwest Rug Mills, Inc.*, 455 F.2d 123 (7th Cir. 1972), holding that the Illinois three-year statute of limitations for securities cases rather than its five-year general fraud statute of limitations "best effectuates" the federal policy for actions brought

under Section 10(b) of the Securities Exchange Act of 1934, and must be used in actions brought in Illinois under the federal act. Afraid that that decision would time bar its action in the Northern District of Illinois, Poloron filed a notice of dismissal of this action under Rule 41(a)(1)(i), Fed.R. Civ.P., before any responsive pleadings had been served.

*Third Suit*

Shortly thereafter, Poloron refiled the same suit in the Southern District of New York, where the statute of limitations had not yet run on its claim. After the filing of an answer, a counterclaim and a third-party complaint against Poloron-Indiana, Carl Levitt, Jay Levitt, Dynamark and George Feiwell,[1] Lybrand moved to dismiss the action on the theory that the "two dismissal" rule barred the action and, alternatively, that the complaint failed to state a cause of action. On April 3, 1975, the court granted Lybrand's motion based on the "two dismissal" rule and dismissed Lybrand's counterclaims against the other parties.[2]

Subsequently, Poloron and Lybrand settled all of their remaining differences, including the counterclaims against Poloron. Dynamark, however, demanded, pursuant to its agreement with Poloron, that it be assigned the right to proceed with an appeal. Poloron agreed to the assignment, and Lybrand stipulated that its settlement with Poloron would not by itself bar Dynamark's right to appeal. Lybrand, however, reserved its right to challenge the validity

of the assignment of Poloron's claim back to Dynamark. With Lybrand's permission, Dynamark filed a timely notice of appeal in Poloron's name, even though the actual assignment of the claim did not occur until afterward.

In this Court Lybrand moved for dismissal of the appeal on the ground that the assignment to Dynamark was champertous under New York law and therefore invalid, and that since Poloron no longer had an interest in the appeal, it was moot. Dynamark moved to be substituted for Poloron as appellant.

Before turning to the issue raised on the merits of the appeal, we must first address Lybrand's motion that the appeal be dismissed because the only person seeking to prosecute the appeal, Dynamark, does so by virtue of an allegedly champertous assignment of the claim dismissed below. Lybrand claims that since Poloron no longer has an interest in the appeal, and since the assignment to Dynamark is invalid, the appeal should be dismissed as moot. We agree that if the assignment were invalid the appeal would have to be dismissed. We find no invalidity in the assignment, however, and therefore deny Lybrand's motion to dismiss the appeal.[3]

■ Lybrand's only assertion that the assignment is champertous and thus invalid rests upon its theory that the assignment violated Section 489 of the New York Judiciary Law (McKinney 1968).[4] We disagree. Section 489 specifically prohibits a corpora-

1. George Feiwell represented the Levitts in the acquisition agreement and Dynamark in the first suit. Although named as a third-party defendant, Samuel Levitt apparently was not served.

2. Lybrand's counterclaim against Poloron generally sought damages for bringing vexatious litigation and further sought payment for professional services rendered in connection with the original sale. The third-party complaint sought indemnity for any judgment secured by Poloron and further sought damages and attorney's fees, again on a vexatious litigation theory. The district court found that the counterclaims were "permissive," requiring their own basis of jurisdiction, and dismissed them for lack of jurisdiction, after it had dismissed the

main action. The court also denied Lybrand's motion for attorney's fees because it had failed to prove that Poloron's behavior was vexatious or in bad faith. Lybrand has not appealed.

3. Since Lybrand has agreed that its settlement with Poloron will not affect Dynamark's rights to proceed with the appeal and since Dynamark's substitution as plaintiff-appellant does not appear to affect this Court's jurisdiction in any manner, we also grant Dynamark's motion to be so substituted.

4. Section 489 of the New York Judiciary Law provides in pertinent part as follows:

No . . . corporation or association, directly or indirectly, itself or by or through its

tion from taking an assignment of a claim for the purpose of suing thereon. As stated in *Lee v. Community Capital Corp.*, 67 Misc.2d 699, 701, 324 N.Y.S.2d 583, 585 (Sup. Ct.1971):

> Section 489 of the Judiciary Law is penal in nature, and manifests this State's public policy prohibiting such practices, and hence classifies all such transactions as void aside from the penal sanctions imposed. * * * [T]his court will not lend its aid or grant relief to a party whose cause of action is predicated on such an act or transaction.

In *Fairchild Hiller Corp. v. McDonnell Douglas Corp.*, 28 N.Y.2d 325, 329, 321 N.Y. S.2d 857, 860, 270 N.E.2d 691, 693 (1971), the New York Court of Appeals described the public policy reflected in the New York statute:

> The legislative concern is clear. To prevent the resulting strife, discord and harassment which could result from permitting attorneys and corporations to purchase claims for the purpose of bringing actions thereon, the Legislature enacted sections 274 and 275 of the former Penal Law, Consol.Laws, c. 40 (the predecessor statutes to § 488 and § 489) declaring the practice of champerty and maintenance to be illegal.

The assignment here does no violence to the legislative concern as expressed by the New York courts; even if we assume that New York law governs, a matter which is not clear on the facts or the law, Dynamark had its own significant interest in the litigation from the outset. It was an original plaintiff in the first suit. In its settlement agreement with the Levitts and Poloron, it retained a seventy-five percent interest in any recovery and agreed to pay seventy-five percent of all litigation expenses in the anticipated future litigation. Furthermore, it is not taking an assignment for the purpose of bringing a new action or proceeding, but rather a reassignment of its own claim to pursue its own interests in an appeal.

Lybrand refers us to *Puro v. Puro*, 31 A.D.2d 837, 298 N.Y.S.2d 111 (1969), for the proposition that Section 489 applies to a reassignment of a claim that once belonged to the assignee. In that case, however, the court refused to decide the issue and remanded the case to determine the relationship between the assignor and assignee. Here, Poloron and Dynamark were the victims of an allegedly fraudulent misstatement in connection with a securities sale. In the settlement agreement, Dynamark had never relinquished its right to recover; it merely limited its right to proceed. By the assignment now in question, Dynamark simply reasserted its right to proceed. Such an assignment violates neither the spirit nor the letter of Section 489. Nor does it violate any other applicable theory of champerty of which we are aware.

We now turn to the district court's order granting Lybrand's motion to dismiss the amended complaint under the two dismissal rule, Rule 41(a)(1), Fed.R.Civ.P. That rule provides in pertinent part as follows:

> (a) *Voluntary Dismissal: Effect Thereof.* (1) . . . [A]n action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.

officers, agents or employees, shall solicit, buy or take an assignment of * * * a * * * thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon; * * *.

Any corporation or association violating the provisions of this section shall be liable to a fine of not more than five thousand dollars * * *.

The district court held that the two dismissal rule barred the instant action, since Poloron had both dismissed the first action by its participation in the stipulation of discontinuance and had filed a notice of dismissal in the second. It is undisputed that the first and second actions were "based on or including the same claim." There is also no question that the second action was terminated by Poloron's notice of dismissal. Dynamark argues that the two dismissal rule does not apply for two reasons: (1) Poloron was not the plaintiff in the first action, and (2) the first dismissal was by stipulation rather than notice of dismissal.

Dynamark's second argument, that the rule should not apply where a prior dismissal is by stipulation, is the more persuasive. The district court held that when literally read the rule "makes no distinction as to how the prior dismissal was effected, so long as the plaintiff was responsible for it" and that it "applies in the present circumstances." 66 F.R.D. at 613, 614. We agree with the district court and the authorities cited by it that the rule by its literal terms makes no distinction between a prior dismissal by notice and one by stipulation, but we disagree, however, with the conclusion that no distinction should be made here.

■■■ It seems to be universally accepted that the primary purpose of the "two dismissal" rule is to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an action prior to the filing of the defendant's responsive pleading. *Engelhardt v. Bell & Howell Company*, 299 F.2d 480, 481–82 (8th Cir. 1962); 5 J. Moore, Federal Practice ¶ 41.04, at 1045, n.16 (2d ed. 1974). The danger of such abuse diminishes, however, where the first dismissal is by stipulation. A dismissal by stipulation is not a unilateral act on the part of the plaintiff but rather is a mutual agreement by all the parties. Lybrand, however, claims that its consent to the stipulation was acquired by deception since it was not made aware that the second action was contemplated. While Poloron, Dynamark and the Levitts may have been less than candid by not informing Lybrand of the purpose of the first dismissal, the stipulation was without prejudice under Fed.R. Civ.P. 41 (a) (1). That rule provides that a stipulation of dismissal will be without prejudice 'unless otherwise stated . . . in the stipulation.' Lybrand, which must be presumed to be familiar with the Rules of Civil Procedure, executed the stipulation with no provision to the effect that it was with prejudice. In Lybrand's argument to this Court it claims that 'it was represented to Lybrand that the parties had reached a settlement and wished to terminate the litigation.'[5] But there is no claim here that the 'parties' had affirmatively indicated tht they would not pursue their claims against Lybrand. Had Lybrand truly been convinced that the claims against it had been resolved, it could easily have requested, and expected no objection to such a request, that the discontinuance include a "*with prejudice*" notation.

■■■ The "two dismissal" rule is an exception to the general principle, contained in Rule 41(a)(1) and honored in equity prior to the adoption of the Federal Rules, that a voluntary dismissal of an action does not bar a new suit based upon the same claim. 5 J. Moore, *supra*, ¶ 41.04, at 1045. Where the purpose behind the "two dismissal" exception would not appear to be served by its literal application, and where that application's effect would be to close the courthouse doors to an otherwise proper litigant, a court should be most careful not to construe or apply the exception too broadly. "[T]he entire purpose of the rules was to strike from judges and litigants useless shackles of procedure to the end that a fair trial of the essential questions could be had." *Glaspell v. Davis*, 2 F.R.D. 301, 304 (D.Or.1942). "The basic purpose of the Federal Rules is to administer justice through fair trials, not through summary dismissals as necessary as they may be on occasion." *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373, 86 S.Ct. 845, 851, 15 L.Ed.2d 807, 814 (1966). Consequently, we

**5.** Appellee's brief p. 4.

hold that the filing of a notice of dismissal preceded by a dismissal by stipulation knowingly consented to by all parties does not activate the "two dismissal" bar against bringing an action based on or including the same claim.

Lastly, Lybrand asserts that the district court's dismissal of the complaint should nevertheless be affirmed since the complaint fails to state a proper claim for which relief can be granted under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). It is clear from even a cursory reading of the district court's opinion that, although Lybrand raised the issue below, the court did not reach or even consider it. Even though an appellate court may affirm a judgment of a lower court upon a theory not considered below, *Le Tulle v. Scofield,* 308 U.S. 415, 421–22, 60 S.Ct. 313, 316, 84 L.Ed. 355, 360 (1940), we prefer in this case, where such a theory has been briefed and argued only cursorily in this Court, to remand for the district court to consider the issue in the first instance.

The order of the district court dismissing the amended complaint on *res judicata* grounds is reversed and the matter is remanded for further proceedings consistent with this opinion.