## MERLAUD v. NATIONAL METROPOLITAN BANK OF WASHINGTON, D. C., et al.

### No. 6539.

United States Court of Appeals for the District of Columbia.

Decided April 6, 1936.
Rehearing Denied June 8, 1936.

Chas. H. Merillat, T. S. Plowman, and Clyde L. Rogers, all of Washington, D. C., for appellant.

Stanley D. Willis, Francis W. Clements, and John E. Laskey, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree in the Supreme Court of the District dismissing plaintiff's (appellant's) bill to establish an equitable lien against funds in the possession of the National Metropolitan Bank, as executor; or, in the alternative, "to the extent of such amount as the court may determine the plaintiff is justly entitled to receive."

The averments of the bill, material here, are as follows: On February 3, 1931, Isobel H. Lenman died testate in the District of Columbia, and on April 20, 1931, her will was duly admitted to probate. The defendant National Metropolitan Bank was duly appointed and qualified as executor. By the terms of the will the next of kin of Manuel Hunter, deceased, late of Tasmania, Australia, were bequeathed a one-eighteenth interest in the personal property of the estate.

Plaintiff is a citizen of the city of Paris, France, and engaged "in the practice of international probate research," that is, "the ascertainment of heirs and next of kin in-

terested in the estates of decedents and protection of interests of those situated at a great distance and unaware of their rights or unable to protect same by reason of lack of means."

That his investigation disclosed that defendants William Ralston Hunter and Ellen Stringham Hunter "were probably children of the Manuel Hunter provided for in the will," each of whom was a nonresident of the District of Columbia and each resided in Tasmania, Australia. Each was ignorant of the existence of such estate, "and through plaintiff herein was first informed that he or she probably was entitled to a share in an estate of large value situated outside the Dominion of Australia." Thereupon defendants Hunter voluntarily, and upon the promise and agreement of the plaintiff to establish and prosecute to success such rights as they had, executed and delivered to plaintiff their agreement under seal, whereby for a consideration therein expressed the defendants Hunter agreed to pay to plaintiff 33⅓ per cent. out of any amount recovered by plaintiff out of an estate abroad; each of the Hunters also therein "agreed to execute to plaintiff an assignment against their interest in said estate in such amount, immediately upon plaintiff supplying such beneficiaries with full information and particulars respecting said estate." A copy of that agreement is Exhibit A of the bill.

The agreement (dated March 25, 1931, and executed in Tasmania) recites that the parties thereto are the Hunters, called "the beneficiaries," and Merlaud; whereas Merlaud at his own expense has "discovered the beneficiaries and has informed them that they are entitled to a share in an undistributed estate abroad, the existence of which they the beneficiaries are unaware and has agreed with the beneficiaries to give them particulars and information respecting the same with a view of the same being got in and recovered it is now therefore distinctly understood and agreed that the said G. Merlaud shall personally pay any and all expenses incidental to the claiming and recovery of the said estate and their title thereto including solicitor's and attorney's fees and Court costs without obligation to the beneficiaries therefor excepting that if it be determined by the Court that the beneficiaries are entitled to a share in the distribution of the said estate then the said G. Merlaud shall have and receive repayment of any and all sums so paid from such sum as may be awarded them from the said estate." If the

information Merlaud claims to have respecting the estate proves to be incorrect and the beneficiaries fail to recover anything, Merlaud shall have no claim against the beneficiaries, "their only obligation being to pay the commission at the rate hereinafter mentioned as and when their share in the said estate is actually got in and recovered and not otherwise. And as remuneration for his services the said G. Merlaud shall be entitled to charge and shall be paid by the beneficiaries a commission at the rate of Thirty-three and one-third Pounds Per Centum on the amount got in and recovered after the deduction thereout of all costs and expenses death duties and other outgoings necessarily and properly incurred" by Merlaud in the prosecution of the claim of the beneficiaries. Then follows the provision "that they the beneficiaries will execute a binding charge or assignment in favor of the said G. Merlaud for the better securing to him the payment of the said commission."

The bill further alleged that thereafter Merlaud notified the Hunters that the estate in question was that of Isobel H. Lenman, then being administered in the District of Columbia, and gave them (the Hunters) full particulars; that Merlaud began assembling evidence to present the claim of the Hunters, and held himself in readiness to perform his obligations under the agreement; that the executor of the estate has in its possession a large additional fund, and ignores Merlaud's claim.

The Hunters being nonresidents, plaintiff sought and obtained an order for substituted service of process. Thereupon the Hunters appeared specially and moved to quash the service on the ground (1) that the bill seeks to determine personal rights and obligations between the plaintiff and the defendants Hunter, shown on the bill to be nonresidents; (2) that it does not appear from the bill that plaintiff had any valid lien on the fund described in the bill or upon any property of the defendants Hunter; (3) that the bill shows on its face that the alleged agreement (Exhibit A) is champertous and void, and that therefore the court was without jurisdiction to determine the rights thereunder without personal service on defendants Hunter.

The court below dismissed the bill, being of the view "that the agreement upon which the bill is based is clearly champertous in its nature, and that it would be against public

240

policy for the Court to lend its aid to the enforcement of such an agreement."

The contract recites that Merlaud "should personally pay any and all expenses incidental to the claiming and recovery of the said estate and their (the Hunters') title thereto including solicitor's and attorney's fees and Court costs. * * * And' as remuneration for his services the said G. Merlaud shall be entitled to charge and shall be paid by the beneficiaries a commission at the rate of Thirty-three and one-third Pounds Per Centum on the amount got in and recovered after the deduction thereout of all costs and expenses death duties and other outgoings necessarily and properly incurred by said G. Merlaud in the prosecution of the claim of the beneficiaries."

It thus appears that Merlaud under the express terms of the agreement was to pay all expenses, "including solicitor's and attorney's fees," and in the event of a successful outcome should be paid 33⅓ pounds per centum on the amount "got in and recovered." While the relations of attorney and client have resulted in recognition of the legality of contingent fees, "we have heard of no case, however, where such contracts have been enforced when they contained a covenant by the attorney to prosecute the cause at his own cost." Johnson v. Van Wyck, 4 App.D.C. 294, 41 L.R.A. 520. By the common law prevailing in this District an agreement by an attorney at law to prosecute at his own expense a suit to recover land in which he personally has and claims no title or interest in consideration of receiving a certain portion of what he may recover is unlawful and void for champerty. Peck v. Heurich, 167 U.S. 624, 17 S.Ct. 927, 930, 42 L.Ed. 302. In the instant case Merlaud was to receive repayment of any and all sums so paid by him from such sum as might be awarded the Hunters "from the said estate," and to be paid a commission "on the amount got in and recovered." As the court observed in the Heurich Case, "if this be not champerty, we fail to see wherein there can be champerty." The character of the enterprise on the part of Merlaud· was plainly speculative, and the agreement he is seeking to enforce is champertous and void. A court in the due administration of justice is bound to refuse its aid to enforce such a contract. Oscanyan v. Winchester Repeating Arms Co., 103 U.S. 261, 26 L.Ed. 539; Weil v. Neary, 278 U.S. 160, 49 S.Ct. 144, 145, 73 L.Ed. 243; Noonan v. Gilbert, 63 App.D.C. 30, 68 F.(2d) 775; Miles v. Mutual Reserve Fund Life Associa-

tion, 108 Wis. 421, 84 N.W. 159. In the Weil Case the court said: "Where a party seeks to enforce a contract, and it is found to be invalid because contrary to public policy, the usual result is that the court dismisses the action and leaves the parties as it finds them."

The alternative prayer that the executor be directed to pay such sum as the court may determine the plaintiff is justly entitled to receive "depends upon the services rendered, and this at once leads to the terms and conditions of the contract which, if void, prohibits the recovery of any compensation under it." Gesellschaft Fur Drahtlose Telegraphie v. Brown, 64 App.D.C. 357, 362, 78 F.(2d)˙ 410, 415.

The decree is affirmed, with costs.

Affirmed.