Miller MARSHALL,* Appellant,

v.

Joseph BICKEL, Appellee.

No. 80–1214.

District of Columbia Court of Appeals.

Argued Nov. 12, 1981.

Decided April 21, 1982.

Thomas Fortune Fay, Olney, Md., for appellant.

G. William Scott, Washington, D. C., for appellee.

Before KELLY, MACK and PRYOR, Associate Judges.

KELLY, Associate Judge:

In this appeal of the trial court's grant of appellee's motion for summary judgment, it is alleged that (1) the trial court erred in finding that the contingent fee agreement between appellant and appellee was champertous and void as against public policy; (2) the rule denying enforcement of champertous contracts should be discarded in light of modern circumstances; (3) the acquisition of a "proprietary interest" in the subject matter of the litigation by an attorney after the litigation has ended does not violate DR 5–103(A) of the American Bar Association's Code of Professional Responsibility, as amended by this court [Rule X of the Rules of this Court Governing the Bar of the District of Columbia] (hereafter DR 5–103(A)); and, (4) appellant is entitled to relief on a quantum meruit basis if the agreement is void. We reverse, holding that the contingent fee agreement between appellant and appellee was not champertous, since it did not require appellant to maintain the lawsuit at his own expense.

Joseph Bickel, appellee, retained Miller Marshall, appellant, an attorney licensed to practice law in the District of Columbia, to represent him in a suit to enforce an oral contract for the purchase of real property located at 1260 Pleasant Street, S. E., and at 1255 W Street, S. E. (1255 W Street property), subject to a lien in favor of the record owners of the property, Mr. and Mrs. Farmer, for $30,000. On or about July 25, 1975, Bickel and Marshall entered into the following written fee agreement:

_____

* Appellant died subsequent to the oral argument in this appeal. Pursuant to D.C.App.R. 43(a), Ruth R. Marshall, Personal Representative of the Estate, moved to be substituted as appellant herein. The motion was granted March 30, 1982.

I hereby employ you to represent me in the matter of my claim arising out of my purchase of certain real estate from Mr. and Mrs. Farmer in 1973. I hereby agree to pay you for your services one-half of all money or land received or recovered. In the event that you do not recover anything you are not to receive any compensation for your services. I also agree to advance $500.00 for necessary costs and expenses incidental to this litigation, but you are not to incur costs and expenses without my approval.

/s/ Joseph Bickel

I hereby accept this employment and agree to pursue this matter diligently on your behalf and to make every reasonable effort to obtain a recovery that will be satisfactory to your interests. I agree not to make any settlements or to incur any costs or expenses of any kind without your approval. I will at all times give you my full cooperation and will expect the same from you.

/s/ Miller Marshall

Bickel alleged in a deposition that a week after this contract was entered into, he and Marshall orally modified the terms of the contract to require Bickel to pay Marshall a flat $17,500, which was then one-half of the appraised value of the 1255 W Street property, should he prevail in the lawsuit.[1] Marshall claimed no such oral modification ever took place.

Marshall filed a lawsuit in Superior Court on behalf of Bickel against the Farmers to recover the property, and the Farmers initiated a separate action against Bickel for ejectment. The two suits were joined and tried together. The court entered a judgment and order on October 18, 1977, which awarded Bickel fee simple title to the 1255 W Street property, free of all liens.

At this point, problems arose between Marshall and Bickel concerning their fee agreement. The events which transpired both during and after a meeting between the two men are disputed by the parties.

In an affidavit in support of his motion for summary judgment, Marshall alleged that on or about November 19, 1977, he and Craig T. Sawyer, a member of his law firm, went to Bickel's home at 1255 W Street, S. E., with a quitclaim deed from Bickel to Marshall for a one-half interest in the 1255 W Street property, in accordance with the fee agreement. Marshall requested that Bickel sign the deed, and he did so. Marshall contended that the entire deed was signed by Bickel and notarized by Sawyer, who happened to be a notary public. Marshall took the quitclaim deed and later recorded it on January 27, 1978.

Bickel however contended that he did not sign any deed on November 19, 1977; instead, he actually signed a paper on October 29, 1977, which was not a deed and contained no description of the property. Bickel alleged that Marshall told him that it was necessary for Bickel to sign the paper to ensure that Marshall could collect his fee in the event of Bickel's death. Marshall promised to keep the paper in his office until the fee was paid. Bickel further alleged that Marshall, without Bickel's knowledge, actually added another paragraph to the paper, which transformed it into a deed, had it notarized by Sawyer and recorded it on January 27, 1978. Bickel learned that Marshall had recorded the deed when he received a letter dated February 8, 1978, from the District of Columbia Department of Finance and Revenue, mentioning that the quitclaim deed had been recorded and asking for information concerning how the grantor had gained title to the property.

Meanwhile, the litigation between Bickel and the Farmers continued. On November 23, 1977, the Farmers filed a notice of appeal from the October 18 order. Bickel also filed a notice of appeal on December 5, 1977. Marshall, who now held a quitclaim deed to the 1255 W Street property, conducted negotiations between the parties, and both appeals were dismissed by praecipe on January 18, 1978.

---

1. Marshall told Bickel that he had little chance of acquiring the property located at 1260 Pleasant Street, S. E.

After the appeals were dismissed, Bickel attempted to obtain the deed to the property from the Farmers. Marshall told Bickel that he would arrange to get the deed for him and record it. The deed from the Farmers to Bickel giving him title to the 1255 W Street property was dated March 13, 1978, and was not recorded until June 8, 1978, well after the quitclaim deed from Bickel to Marshall had been recorded. Despite repeated requests, Bickel never received a copy of the Farmer deed from Marshall.

After the Farmer deed was recorded, Marshall requested payment of the contingent fee by sale of the 1255 W Street property, which was Bickel's residence. Bickel refused, claiming that he only owed Marshall $17,500, pursuant to the alleged oral modification of their contract. The value of the property had increased considerably since the parties had entered into the contract in 1975.

To collect his fee, Marshall filed suit in the Superior Court on October 12, 1978, requesting either the partition or the sale of the 1255 W Street property. The complaint was amended on February 2, 1979, to include the following four counts: Count I—breach of contract; Count II—reformation of deed; Count III—partition of real estate; and Count IV—libel and slander. Bickel answered *inter alia* that the deed was void and ineffective due to fraud, and, he later asserted a counterclaim against Marshall alleging misrepresentation, fraud and abuse of process which the court deemed filed on July 31, 1980. On March 17, 1980, Bickel moved for summary judgment on Count IV of Marshall's complaint.

On April 14, 1980, Marshall moved for partial summary judgment on the first three counts of his complaint. Bickel filed a cross-motion for summary judgment on May 12, 1980, alleging that the July 25,

1975 fee agreement was void because it was champertous. Marshall opposed Bickel's motion, asserting that the fee agreement was not champertous but instead, was a reasonable contingent fee arrangement capable of enforcement.

On July 31, 1980, the trial court granted Bickel's cross-motion for summary judgment. In its opinion, the court held that a contingent fee contract by which an attorney acquires a proprietary interest in the land which is the subject matter of the lawsuit is champertous and void as against public policy.

On September 26, 1980, the trial court granted Bickel's motion for partial summary judgment on Count IV of the complaint, thereby disposing of the entire complaint. Marshall duly noted this appeal.[2]

## II

Appellant asserts that the contingent fee agreement between himself and appellee was not champertous. The trial court held that since the contract gave appellant a "proprietary interest" in the subject matter of the litigation, the fee agreement was champertous and void as against public policy. Because we hold that the trial court misapplied the law of champerty as it is followed in the District of Columbia and incorrectly determined that the agreement was champertous, we reverse.

■ The doctrine of champerty is an ancient one.[3] It seeks to prevent an attorney from speculating in lawsuits and gambling in litigation at his or her own expense. The leading opinion on champerty in this jurisdiction, *Merlaud v. National Metropolitan Bank of Washington, D. C.*, 65 App.D.C. 385, 84 F.2d 238 (1936), defined champerty as follows:

Therefore, the September 26, 1980 order triggered appellant's right of appeal as to the entire case.

---

2. Appellee alleged that this court lacks jurisdiction to review the order of July 31 because it was not specifically designated in the notice of appeal. We find this argument to be without merit. Appellant could not have appealed the July 31 order prior to the disposition of Count IV of the complaint. *See* Super.Ct.Civ.R. 54(b).

3. For a thorough discussion of champerty and its ancient origins, *see Maintenance by Champerty*, 24 Calif.L.Rev. 48 (1935).

By the common law prevailing in this District an agreement by an attorney at law to prosecute at his own expense a suit to recover land in which he personally has and claims no title or interest in consideration of receiving a certain portion of what he may recover is unlawful and void for champerty.... [*Id.* at 387, 84 F.2d at 240, citing *Peck v. Heurich*, 167 U.S. 624, 17 S.Ct. 927, 42 L.Ed. 302 (1896).]

Thus there are three essential elements of common law champerty: (1) the attorney's fee must come from the recovery in a successful lawsuit; (2) the lawyer must have no independent claim to the recovery fund; and (3) the costs and expenses must be borne by the attorney with no expectation of reimbursement from the client. *Id.; Johnson v. Van Wyck*, 4 App.D.C. 294, 315 (1894); *see* Williston on Contracts §§ 1711–12 (3rd ed. 1972). If a contract is determined to be champertous, District of Columbia courts will not enforce it, and the attorney will be denied even quantum meruit recovery. *Merlaud v. National Metropolitan Bank of Washington, D. C., supra* 65 App.D.C. at 387, 84 F.2d at 240.

There is no dispute that the first two elements of champerty have been satisfied in this case, as they are in any contingent fee agreement. The contract between appellant and appellee provided that appellant would receive one-half of all money or land recovered as a result of the litigation, and appellant claimed no independent interest in the 1255 W Street property before the commencement of the suit against the Farmers. What distinguishes a champertous fee agreement from a valid contingent fee contract however is the existence of the third element of champerty—that the attorney maintain the lawsuit at his or her own expense, without expectation of reimbursement. *Golden Commissary Corp. v. Shipley*, D.C.Mun.App., 157 A.2d 810, 814 (1960). That crucial element was missing from the fee agreement between appellant and appellee.

■ The contract between appellant and appellee expressly stated that appellee was to advance the necessary costs and expenses of the lawsuit. While the record reflects that appellee never actually paid any of the costs or expenses of the litigation, there is no indication that the parties intended that appellant maintain the lawsuit at his own expense without reimbursement. Unless the attorney and his or her client contemplate that the attorney will finance the litigation without reimbursement by the client, their fee agreement cannot be champertous. We therefore hold that the contingent fee agreement between appellant and appellee was not invalid under the law of the District of Columbia.

In its opinion, the trial court confused champerty with DR 5–103(A) when it held that the contract was champertous because it violated DR 5–103(A). DR 5–103(A) provides:

A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of the litigation he is conducting for a client, except that he may:

(1) Acquire a lien granted by law to secure his fee or expenses;

(2) Contract with a client for a reasonable contingent fee in a civil case.

DR 5–103(A) is not a codification of champerty; instead, it prohibits different conduct. The Disciplinary Rule is designed to prevent an attorney from acquiring an interest in the outcome of the litigation that would adversely influence his or her ability to exercise impartial professional judgment. Annotated Code of Professional Responsibility 199 (1979). A fee agreement may arguably violate DR 5–103(A) and not be champertous because the attorney does not finance the lawsuit. Here, the trial court was concerned with the nature of appellant's interest in the 1255 W Street property, the necessary consideration in determining whether there had been a violation of DR 5–103(A); the court failed to consider whether appellant had paid the costs and expenses of the litigation without expectation of reimbursement, the crucial inquiry in a case where champerty is at issue.

While we hold that the contingent fee agreement between appellant and appellee

was not champertous, we express no opinion on the question of whether appellant's acquisition (if by valid deed) of a one-half interest in the 1255 W Street property before the dismissal of the appeals in the Bickel/Farmer litigation violated DR 5–103(A) or whether, in fact, the fee arrangement was orally amended as Bickel claims.

*Reversed and remanded.*