KORO COMPANY, INC., Plaintiff,

v.

BRISTOL–MYERS COMPANY, et al., Defendants.

Civ. A. No. 82–880.

United States District Court, District of Columbia.

July 7, 1983.

281

Peter S. Reichertz of McMurray & Pendergast, Washington, D.C., David B. Kirschstein and Martin Schiffmiller of Kirschstein, Kirschstein, Ottinger & Cobrin and Stephen Sussman of Lipkowitz & Plaut, New York City, for plaintiff.

Jerome Shapiro, Susan L. Thorner, Vilia B. Hayes and William R. Stein of Hughes, Hubbard & Reed, New York City, and

Fitzpatrick, Cella, Harper & Scinta, New York City, of counsel, Arnold Bauman, Robert Dobbin, Claudia Bowman and R. Madeline Schacter of Shearman & Sterling, Washington, D.C., and Daniel J. Plaine of Steptoe & Johnson, Washington, D.C., for defendants.

## OPINION

CHARLES R. RICHEY, District Judge.

Before the Court are defendants' motion to dismiss or for summary judgment,[1] plaintiff's opposition thereto, numerous supplemental memoranda, and the entire record herein, the Court having heard argument and taken evidence on the questions presented. As the basis for their motion, defendants contend that plaintiff is not the real party in interest to this action. Defendants make three specific arguments: (1) that the antitrust claim which plaintiff is asserting here was never effectively assigned to plaintiff because it was not properly transferred to the entity which assigned it to plaintiff, (2) even if the transfer to plaintiff's assignor was valid, the subsequent assignment to plaintiff should be considered void because it was not supported by adequate consideration, and (3) the subsequent assignment to plaintiff should also be considered void because it was champertous. The Court has carefully considered all of these arguments and concludes that the third argument clearly supports a grant of summary judgment in defendants' favor. The Court also concludes that, although the first or the second argument standing alone might not be sufficient to support a grant of summary judgment to defendants, these arguments clearly support the propriety of that result when taken together and in conjunction with the third argument. In the following opinion, the Court shall discuss each of these arguments and the reasoning underlying its conclusions.

1. Because the Court has considered matters outside of the pleadings, it must, pursuant to Fed.R.Civ.P. 12(b)(6), treat defendants' motion as one for summary judgment. This opinion shall constitute the Court's findings of fact and conclusions of law on summary judgment.

## I. BACKGROUND

The claim at issue in this case is a claim for treble damages arising under the anti-trust laws of the United States, principally the Sherman Act, 15 U.S.C. §§ 1 *et seq.* This claim allegedly accrued to Premo Pharmaceutical Laboratories, Inc., a New York corporation, with offices in New Jersey (Premo New York), from 1959 to at least 1979. In 1979, two of Premo New York's shareholders, Seymour Blackman and Sol Silverang (Blackman and Silverang), sought to effect a merger of Premo with Bio-research, Inc., a New Jersey corporation, with offices in the same location as Premo's. Under the terms of the merger, the resulting corporation was to be named Premo Pharmaceutical Laboratories, Inc., but was to be a New Jersey corporation (Premo New Jersey). *See* Plaintiff's Exhibits 2 & 3. A certificate of merger for this transaction was filed in the state of New Jersey on November 29, 1979, Plaintiff's Exhibit 5, while a comparable certificate of merger was filed in the state of New York on June 24, 1981, Plaintiff's Exhibit 4. The merger was subsequently contested by two other shareholders of Premo New York, John and Steven Blackman, the sons of Seymour Blackman, who claimed that their assent to the merger had been procured by fraud. Defendants' Exhibit 1. Their claim of fraud was settled, however, when, in December of 1981, all the shares of Premo New Jersey were purchased by the Lemmon Company in a stock purchase transaction. Defendants' Memorandum on Questions Propounded by the Court, at 21.

Under the terms of the Stock Purchase Agreement (SPA) drafted for the Lemmon transaction, and executed in the state of New York, John and Steven Blackman received $2.7 million in exchange for their shares of Premo New Jersey, Defendants' Exhibit 6, at 324, while Seymour Blackman and Sol Silverang received $1.8 million for their shares. Defendants' Exhibit 5, at 6. The SPA also purported to convey the shares of Premo New York "to the extent that it remains in existence," *id.* at 221, 225, and called for an assignment of the claim asserted in *Premo Pharmaceutical Labora-tories, Inc. v. Bristol-Myers, et al.,* No. 81–2769 (D.D.C.), an action previously filed in this Court, *id.* at 10–11. A written assignment of claim was drafted, specifying that Premo New Jersey would assign the claim to Koro, Inc., as designee of Blackman and Silverang. Defendants' Exhibit 3. The consideration recited in the assignment was "the Sum of One ($1.00) Dollar ... and other good and valuable consideration," *id.,* although Burton Rubin, one of the attorneys who structured the transaction, testified that the one dollar was never paid. Transcript of the Hearing of March 11, 1983, at 102. Mr. Rubin also testified that the sole purpose for the assignment was to enable Koro to bring an action on this antitrust claim. *Id.* at 100.

On the basis of this assignment, Koro then moved to be substituted as plaintiff in *Premo Pharmaceutical Laboratories, Inc. v. Bristol-Myers, et al.* When defendants objected, Premo voluntarily dismissed the action. The present suit was subsequently filed in the name of Koro, alleging the same cause of action as the prior suit. Defendants thereupon lodged the same objections they had raised to the attempted substitution, objections which the Court will now address in turn.

## II. THERE IS EVIDENCE THAT THE STATUTORY MERGER BETWEEN PREMO NEW YORK AND BIO–RESEARCH WAS NOT LEGALLY EFFECTIVE.

Defendants argue first that the instant claim could not have been assigned from Premo New Jersey to plaintiff because it was not effectively transferred from Premo New York to Premo New Jersey in the 1979 statutory merger between Premo New York and Bio-research, Inc. They offer a number of pieces of evidence to show that this merger was not legally effective. Most importantly, they note that a certificate of merger for the transaction was not filed in the state of New York for over 18 months after a comparable certificate of merger was filed in New Jersey.

In order to be legally effective, a merger between a New York corporation and a New Jersey corporation must comply with the applicable statutory requirements of both states. *See* New Jersey Business Corporation Act (N.J.B.C.A.) § 14A:10–7(1)(a), New York Business Corporation Law (N.Y.B.C.L.) § 907(b). *See generally* H. Henn, Law of Corporations § 346, at 716 (2d ed. 1970). Defendants contend that the delay in the filing of the New York certificate of merger violated N.J.B.C.A. § 14A:10–4(2), which provides that:

> The executed original and a copy of the certificate shall be filed in the office of the Secretary of State and the merger or consolidation shall become effective upon the date of such filing or at such later time, *not to exceed 30 days after the date of filing,* as may be set forth in the certificate (emphasis added).

Under N.Y.B.C.L. § 907(g), a merger does not become effective until a certificate of merger is filed with the Secretary of State of New York. Defendants contend that because the merger did not become effective in New York until long after the expiration of the 30-day period allowed for by the New Jersey statute, it was invalid under New Jersey law.

As further proof of the invalidity of the merger, defendants point to the fact that the merger was challenged by two of Premo New York's principal shareholders, John and Steven Blackman, who alleged that their assent to the merger was obtained by fraudulent concealments and misrepresentations. Defendants' Exhibit 1. In addition, defendants point out that, in several significant respects, Premo New York continued to be treated as a separate and viable entity months after the merger supposedly occurred:

(1) In the Stock Purchase Agreement between the Lemmon Company, Sol Silverang, and Seymour Blackman, the sellers sold shares of Premo New York to Lemmon. Defendants' Exhibit 5, at 2.

(2) In connection with the stock purchase transaction, Premo New York elected a new board of directors. *Id.* at 67–70.

(3) Premo New York entered into agreements with Blackman and Silverang for the provision of consulting services after the sale to Lemmon. *Id.* at 98–105, 109–16.

(4) Premo New York commenced the predecessor suit against defendants on November 17, 1981. *See Premo Pharmaceutical Laboratories, Inc. v. Bristol-Myers, et al.,* No. 81–2769 (D.D.C.).

Finally, defendants point to the absence of the customary professional certification of statutory merger in the numerous representations made by counsel in connection with the stock purchase transaction. See Defendants' Exhibit 5, at 166–69. Indeed, several of the associated documents specifically stated that Premo New York "may nevertheless continue to exist." *Id.* at 67, 69.

Plaintiff counters this evidence by arguing that the references to Premo New York in the Stock Purchase Agreement were included merely as a precaution against any claim that the merger might be ineffective. Plaintiff contends that the terms of the transaction were based primarily on the assumption that the merger was effective, but that precautions had to be taken because of the delay in filing the certificate of merger in New York and also because of the legal challenge to the merger by John and Steven Blackman. With respect to the charges of fraud raised in that legal challenge, plaintiff argues that there is no evidence in the present record that any misrepresentations were in fact made in the course of the merger. Plaintiff also notes that the case was entered as settled after the completion of the stock purchase transaction. As to the execution of a consulting agreement and the commencement of a lawsuit by Premo New York, plaintiff argues that these were simply mistakes made by counsel, and Burton Rubin, Blackman and Silverang's attorney, testified to this effect.

Plaintiff counters defendants' argument under N.J.B.C.A. § 14A:10–4(2) by pointing

**284**

out that there have been no cases interpreting that provision as defendants would have this Court do. Plaintiff argues that the provision must be looked at in the context of other provisions in the N.J.B.C.A., particularly §§ 14A:10–7(1)(b) and 14A:10–8. The former of these sections provides that a certificate of merger "shall set forth that the applicable provisions of the laws of the jurisdiction under which each foreign corporation was organized have been, or upon compliance with filing and recording requirements, *will have been* complied with" (emphasis added). Plaintiff argues that the clear inference to be drawn from this section is that the filing and recording requirements of New York could legitimately have been complied with well after the filing of the certificate of merger in New Jersey. The latter section provides that a merger can be abandoned prior to its effective date by complying with specified abandonment procedures. According to plaintiff, it is clear from this provision that a merger automatically becomes effective unless it is abandoned. Because there was no abandonment of the merger here, plaintiff argues that it automatically became effective.

Finally, plaintiff argues that even if the merger between Premo New York and Bio-research was not legally effective, Lemmon Company is the only entity beside plaintiff that could now own the instant claim, and Lemmon Company has assigned any interest it has in the claim to plaintiff. In support of its contention that Lemmon is the only other possible owner of the claim, plaintiff points to ¶ 6.1.1 of the Stock Purchase Agreement, Defendants' Exhibit 5, at 7–8, which plaintiff says effected a transfer of all the assets of Premo New York to Lemmon. In support of its contention that Lemmon has assigned to it any interest Lemmon has in the claim, plaintiff points to a letter from the President of Lemmon to Messrs. Seymour Blackman and Sol Silverang dated March 10, 1983. The letter states that, pursuant to the SPA, "to the extent that [Lemmon] may at this time possess the [instant] anti-trust cause of action . . . we hereby assign any such cause of action" to plaintiff. Court's Exhibit 1, at 1–2.

Defendants not only challenge the admissibility of this letter, but also strenuously assert that Lemmon could not possibly assign the instant claim to plaintiff because it was never Lemmon's to assign. Defendants maintain that ¶ 6.1.1 of the SPA transferred only Blackman and Silverang's *individual* interest in Premo to Lemmon. It could not transfer a *corporate* asset like a cause of action, because it was not theirs to assign. *See Program Engineering, Inc. v. Triangle Publications, Inc.,* 634 F.2d 1188 (9th Cir.1980); *Kreager v. General Electric Co.,* 497 F.2d 468 (2d Cir.), *cert. denied,* 419 U.S. 861, 95 S.Ct. 111, 42 L.Ed.2d 95 (1974). They point also to the fact that the assignment was of assets "used by [the companies whose stock was being sold] in connection with their respective businesses." Defendants' Exhibit 5, at 229. The instant cause of action, defendants contend, plainly was not used by Premo "in connection with [its] respective business[ ]."

Looking at these arguments as a whole, the Court is not convinced that the merger was properly effected or that the instant claim was otherwise effectively assigned by Lemmon. There were repeated suggestions in the SPA that Premo New York continued to exist. Although there is no evidence of fraud before the Court, the merger between Premo New York and Bio-research *was* challenged on that ground by principal shareholders of Premo. The New York certificate of merger was filed after a very long delay, and clearly more than 30 days after the New Jersey certificate was filed. The Court is not persuaded by plaintiff's attempts to distinguish away the language of N.J.B.C.A. § 14A:10–4(2). Nor is it clear that the instant claim was ever assigned to Lemmon in the SPA, nor that the letter proffered by plaintiff is an admissible or effective assignment of the claim by Lemmon. The legal questions are close and the draftsmanship of the relevant legal documents extremely imprecise. Nonetheless, although these arguments standing alone might not be enough to support a grant of summary judgment, the Court holds that they clearly support the propriety of that

result when taken in conjunction with defendants' other arguments, to which the Court will now turn.

### III. THERE IS REASON TO BELIEVE THAT THE ASSIGNMENT OF THE CLAIM WAS NOT SUPPORTED BY ADEQUATE CONSIDERATION.

Defendants' second argument in support of their motion is that the assignment of the instant claim from Premo New Jersey to plaintiff was not supported by adequate consideration. Defendants argue that the Court should look only at the face of the assignment in assessing the adequacy of consideration and that the consideration recited therein is plainly inadequate. Specifically, the assignment recites the supporting consideration as "the Sum of One ($1.00) Dollar ... and other good and valuable consideration." Defendants' Exhibit 3, at 1. It is generally stated that the sum of one dollar constitutes inadequate consideration. *See* Restatement (2d) of Contracts § 87, comment b (1981); *District Distributors, Inc. v. Heublein, Inc.,* 1971 Trade Cas. (CCH) ¶ 73,695, at 90,903 (D.D.C.1971). Defendants argue that the mere recital of "other good and valuable consideration" is also insufficient to supply consideration. *See Corbin on Contracts* § 130, at 560 n. 8 (1982).

Defendants further argue that, even looking beyond the face of the assignment, there plainly was inadequate consideration here. Plaintiff's witness, Burton Rubin, testified that the one dollar was never even paid. Moreover, when questioned by the Court as to whether this meant there really was nothing paid for the assignment, Mr. Rubin replied, "Yes, your honor." Transcript, at 102. Based on this testimony, this would appear to be a hornbook case of inadequate consideration. *See Corbin, supra.*

Plaintiff counters that, under § 5–1107 of New York General Obligations Law, consideration is not needed to support an assignment if the assignment is in writing, as it was here. Moreover, plaintiff argues that even if consideration was required for the assignment, it was present here because the assignment was an integral part of the sale by Blackman and Silverang of their interests in Premo to Lemmon. Plaintiff argues that the assignment was part of the consideration that Blackman and Silverang received for the sale of their Premo stock. In support of this argument, plaintiff points to ¶ 6.2.3 of the SPA which specified delivery of the assignment as a condition for the sale, Defendants' Exhibit 5, at 10–11, and to the fact that the assignment was attached as an exhibit to the SPA, *id.* at 120–21. Plaintiff also sought to show, through the testimony of Mr. Rubin, that the assignment of the claim was considered by the negotiators of the stock purchase transaction to be an essential element of the deal. Plaintiff contends that such parol evidence is admissible to clarify the terms of the deal, since it does not contradict the written terms of the assignment.

Defendants object that Mr. Rubin's testimony about negotiators' intentions is inadmissible parol evidence because it *does* contradict the terms of another writing, the SPA. They point to ¶ 3 of the SPA, which specifies the "purchase price" for Blackman and Silverang's stock as $1.8 million. Defendants' Exhibit 5, at 6. Defendants point out that the only other items referred to in the SPA as "consideration" were two used automobiles. *Id.* at 11–12. The SPA also provides that "there are no warranties, representations, inducements or conditions which are not expressly set forth herein." *Id.* at 32.

Although defendants do not answer plaintiff's contention that consideration is not required under New York law, plaintiff earlier argued that consideration *is* required to validly transfer an antitrust claim. Plaintiff's Opposition, at 4. Plaintiff itself also raised a question as to the choice of law to be applied in this case, which shall be fully discussed in Part III. The other legal questions raised in connection with the adequacy of consideration are, as with the issue of the merger's validity, extremely close and the legal draftsmanship extremely im-

precise. It is not at all clear from the documents that the assignment was part of the formal consideration exchanged in the stock purchase transaction. It also is not clear that parol evidence should be admissible to "explain" the terms of the assignment since such evidence at the same time "contradicts" the terms of the SPA. Thus, this issue too is one that, when taken in conjunction with the other points raised by defendants, vitiates in favor of summary judgment, although standing alone it might not be enough.

## IV. THE ASSIGNMENT OF THE CLAIM WAS CHAMPERTOUS AND THEREFORE IS VOID.

Defendants' third and most persuasive argument is that the assignment of the instant claim from Premo New Jersey to Lemmon is void because it was champertous. Defendants point to the testimony of Mr. Rubin, plaintiff's own witness, who admitted that the sole purpose of the assignment was to enable plaintiff to bring an action on the claim. Defendants argue that an assignment for such a purpose violates § 489 of the New York Judiciary Law, which explicitly proscribes the assignment of a "thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon."

■ Plaintiff's first response to this argument is that New York law does not apply to the assignment. Plaintiff argues that New Jersey law should apply since, at the time of the assignment, both Premo and plaintiff were New Jersey corporations doing business in New Jersey. Under New Jersey law, champerty is no longer prohibited. *See, e.g., Sweeney v. Veneziano,* 70 N.J.Super. 185, 175 A.2d 241, 245–46 (App. Div.1961); *Hughes v. Eisner,* 8 N.J.Super. 351, 72 A.2d 901, 902 (Ch.Div.1950).

Defendants counter this argument by pointing to the choice of law clause in the Stock Purchase Agreement, which specifies the applicability of New York law. Defendants' Exhibit 5, at 33. As plaintiff itself argued with respect to the issue of

consideration, the assignment was a part of the stock purchase transaction, and was made an exhibit to the SPA. Therefore, defendants contend, the assignment should be governed by the SPA's choice of governing law, absent a compelling reason not to do so. *See* Restatement (2d) of Conflict of Laws § 187 (1971); *Federal Deposit Insurance Corp. v. Bank of America,* 701 F.2d 831, 834 (11th Cir.1983); *cf. M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

■ Defendants further argue that even if the SPA's choice of law is not controlling, the choice of law test of this jurisdiction dictates that New York law should govern. Under that test, the Court must apply the law of the state that has "the more significant relationship to the parties and the transaction." *Owen v. Owen,* 427 A.2d 933, 937 (D.C.1981); *Clayman v. Goodman Properties, Inc.,* 518 F.2d 1026, 1030 n. 22 (D.C. Cir.1973); *Legg, Mason & Co. v. Mackall & Coe, Inc.,* 351 F.Supp. 1367, 1370 n. 2 (D.D. C.1972). In making this determination, five factors should be considered: (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance of the contract, (4) the location of the subject matter of the contract, and (5) the place of incorporation and the place of business of the parties. Restatement (2d) of Conflict of Laws § 188 (1971); *see In re Parkwood, Inc.,* 461 F.2d 158 (D.C.Cir.1971). Of these factors, only the last suggests the application of New Jersey law here, whereas three suggest the application of New York law—the place of contracting, the place of performance, and the location of the subject matter of the contract (in this case, the place where the cause of action allegedly accrued).

Moreover, beyond the mere counting of contacts, it is necessary for the Court to assess the governmental policies underlying the conflicting laws and the interests of each state in having its law applied to the facts under review. *See Mazza v. Mazza,* 475 F.2d 385, 387–88 (D.C.Cir.1973); *Williams v. Williams,* 390 A.2d 4, 5–6 (D.C. 1978). Here, New York has a clearly enun-

ciated public policy against champerty, in the form of § 489 of the Judiciary Law, whereas New Jersey has no stated policy against champerty, but it no longer recognizes the doctrine. In such a situation, New York clearly has the stronger interest in the enforcement of its policy. Application of New York law would frustrate no New Jersey policy, whereas application of New Jersey law would certainly impair the purpose underlying the New York statute, namely the prevention of trafficking in litigation claims.

It should also be noted that this forum, the District of Columbia, has an interest in applying the law that most conforms to its own. Champerty is prohibited in the District of Columbia, as it is in New York. *See Marshall v. Bickel,* 445 A.2d 606, 609 (D.C. 1982); *Golden Commissary Corp. v. Shipley,* 157 A.2d 810, 814 (D.C.1960); *Merlaud v. National Metropolitan Bank,* 84 F.2d 238, 240 (D.C.Cir.), *cert. denied,* 299 U.S. 584, 57 S.Ct. 109, 81 L.Ed. 430 (1936). The same is true under federal common law, as it has been interpreted by this Court. *See District Distributors, Inc. v. Heublein, Inc.,* 1971 Trade Cas. (CCH) ¶ 73,695, at 90,903 (D.D.C.1971). In light of all of these considerations, the Court concludes that the application of New York's law prohibiting champerty is an appropriate choice of law in this case.[2]

Plaintiff's second argument is that even applying New York's champerty law, the assignment at issue here is not prohibited. Plaintiff argues that § 489 of the Judiciary Law does not apply to the assignment of a cause of action that is "an incidental part of a substantial commercial transaction involving the sale of a corporation," Plaintiff's Opposition, at 14, and that therefore § 489 does not apply to the assignment at issue here because it was part of the stock purchase transaction between Premo and Lemmon. In support of this argument,

plaintiff cites the case of *Fairchild Hiller Corp. v. McDonnell Douglas Corp.,* 28 N.Y.2d 325, 321 N.Y.S.2d 857, 860–61, 270 N.E.2d 691 (1971), as well as *Prudential Oil Corp. v. Phillips Petroleum Corp.,* 69 A.D.2d 763, 415 N.Y.S.2d 217 (1st Dep't 1979), and *American Express Co. v. Control Data Corp.,* 50 A.D.2d 749, 376 N.Y.S.2d 153 (1st Dep't 1975).

Defendants counter that *Fairchild Hiller* does not establish an exception to § 489 for *any* assignment made in the context of a "substantial commercial transaction." Rather, the case holds that, in order to fall within the statute, an assignment must be made *solely* for the purpose of bringing an action on the claim and "this implies an exclusion of any other purpose." 321 N.Y. S.2d at 860, 270 N.E.2d 691. Defendants also point to the facts of that case, in which Fairchild Hiller obtained an assignment of claim as a *part* of the "operating assets" of a corporation that it was purchasing *in toto.* The Court stated that such an assignment did not contravene § 489 because the intent of the parties was to effect the larger purchase transaction, not solely to transfer the legal claim. The instant case is distinguishable from *Fairchild Hiller* because the claim here was not assigned along with all the other assets of Premo New Jersey to Lemmon; instead, it was shunted aside to plaintiff, an entity completely unrelated to Lemmon, and the assignment here was admittedly made solely to enable plaintiff to bring an action on the claim.

The case of *Prudential Oil Corp. v. Phillips Petroleum Co.,* 69 A.D.2d 763, 415 N.Y. S.2d 217 (1st Dep't 1979), is also distinguishable from the present one. In that case, a claim was assigned to the wholly-owned subsidiary of the assignor in the course of an extensive corporate reorganization. As it had before in *American Express Co. v. Control Data Corp.,* 50 A.D.2d 749, 376 N.Y. S.2d 153 (1st Dep't 1975), the Court empha-

---

**2.** It could also be argued, although it was not suggested by *either* side, that the proper law to be applied is either the law of the forum, *see* Restatement (2d) of Conflict of Laws § 125 (1971), or federal common law, see *In re Fine Paper Litigation,* 632 F.2d 1081, 1090 (3d Cir.

1980). However, because both District of Columbia law and federal law are consonant with New York law on the issue of champerty, the Court's decision on this issue would be the same under those bodies of law as it is under New York law.

sized the relationship between the assignor and the assignee in concluding that § 489 did not apply. Neither case enunciated the broad proposition proffered by plaintiff that any assignment made in the context of a "substantial commercial transaction involving the sale of a corporation" is excepted from § 489, and indeed the latter referred to the holding of *Fairchild Hiller* as "imprecise." *Id.* 376 N.Y.S.2d at 154. Both decisions did, however, reiterate the principle that an assignment made solely for the purpose of bringing suit is a prohibited one. 415 N.Y.S.2d at 218, 376 N.Y.S.2d at 154.[3]

In the Court's view, the critical inquiry is whether the assignment was made for the *exclusive purpose* of bringing an action on the claim. As *Fairchild Hiller* makes clear, this is usually a question of fact, 321 N.Y. S.2d at 860, 270 N.E.2d 691; *see also Knobel v. Estate of Hoffman,* 105 Misc.2d 333, 432 N.Y.S.2d 66, 68 (Sup.Ct.1980), but the facts here are undisputed. Plaintiff's own witness, who was a key actor in concluding the deal, testified that the sole purpose for the assignment was to enable plaintiff to bring an action on the claim. Transcript, at 100. Thus, this case presents precisely the sort of assignment which *is* covered by § 489, and which, therefore, is prohibited as champertous.

Indeed, not only is the assignment here precisely the kind of assignment that is covered by § 489, but its prohibition will serve precisely the purposes that § 489 was designed to serve. The statute is designed to "prevent the resulting strife, discord, and harassment which could result from permitting attorneys and corporations to purchase claims for the purpose of bringing actions thereon." *Fairchild Hiller,* 321 N.Y.S.2d at 860, 270 N.E.2d 691. It is, in other words, designed to prevent trafficking and speculation in lawsuits. In this case, there can

be no doubt that the assignment was made in order to prosecute the claim on a speculative basis. The claim was split off from the other assets of Premo New Jersey, and Blackman and Silverang were taking a chance on winning a windfall settlement or an award of damages.

In reaching the conclusion that this assignment was champertous, the Court is also mindful of the nature of the underlying cause of action. Plaintiff here is seeking to enforce a claim under the federal antitrust laws. It has been stated that the role of a treble-damage plaintiff under the antitrust laws is one of "private attorney general." *Waldron v. Cities Service Co.,* 361 F.2d 671, 673 (2d Cir.1966), *aff'd,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). An assignee for one dollar who is plainly speculating on a lawsuit is hardly the sort of plaintiff Congress contemplated for such a role. *Cf. District Distributors, Inc. v. Heublein,* 1971 Trade Cas. (CCH) ¶ 73,695, at 90,903 (D.D.C.1971) (dismissing a claim under the Clayton Act brought by a plaintiff who had purchased it for $1.00).

Thus, it is clear that the assignment from Premo New Jersey to plaintiff was champertous, and because it was champertous, it is null and void. *See Lee v. Community Capital Corp.,* 67 Misc.2d 699, 324 N.Y.S.2d 583, 585 (Sup.Ct.1971). No recovery is permitted to a corporation that takes a champertous assignment. *Bottenus v. Blackman,* 71 Misc.2d 583, 336 N.Y.S.2d 790, 795 (Sup. Ct.1972). *See also Bennett v. Supreme Enforcement Corp.,* 275 N.Y. 502, 11 N.E.2d 315, 316 (Ct.App.1937); *Frank H. Zindle, Inc. v. Friedman's Express, Inc.,* 258 A.D. 636, 17 N.Y.S.2d 594, 595 (1st Dep't 1940); *American Restaurant China Manufacturers Association, Inc. v. Corning Glass Works,* 24 Misc.2d 634, 198 N.Y.S.2d 366, 371 (Sup.Ct.

---

**3.** The Court's attention was also diverted to the case of *Platt Corporation v. Platt,* 21 A.D.2d 116, 249 N.Y.S.2d 75 (1st Dep't 1964), *aff'd,* 15 N.Y.2d 705, 256 N.Y.S.2d 335, 204 N.E.2d 495 (1965), a case cited by neither plaintiff nor defendants. In *Platt,* the predecessor to § 489 was held not to apply to an assignment made to shareholders of a corporation as additional consideration for the exchange of their shares

in a share-for-share transaction. Although on the surface this case would appear to be analogous to the instant action, a closer reading reveals that the assignment in *Platt* was not of a cause of action but rather of the *proceeds* from a cause of action. The plaintiff there was a corporation pursuing its own claim, not a corporation prosecuting a claim which it had acquired by assignment.

1960). Accordingly, plaintiff here may not recover, and shall be barred from seeking relief.

### V. THERE IS NO WAY THAT PLAINTIFF CAN NOW RECTIFY ITS INABILITY TO SUE ON THE INSTANT CLAIM.

Because the Court concludes that the assignment from Premo New Jersey to plaintiff was champertous, plaintiff is without recourse to revive the claim. Even assuming, *arguendo,* that the letter from the President of Lemmon, which plaintiff sought to introduce in evidence, constitutes a valid assignment of the claim, that assignment is also void. Because it is made pursuant to the Stock Purchase Agreement, it is governed by New York law, and thus is proscribed by § 489 of the Judiciary Law.

If, on the other hand, plaintiff were to admit that the letter is insufficient to effectively assign the claim and were to attempt to obtain an entirely new, independent, and formal assignment from Lemmon, that assignment would also fail. If it were governed by New York law, it would fail on the grounds of champerty. If it were governed by New Jersey law, it would fail for lack of consideration. Further, defendants could object again that Lemmon never owned the claim and thus could not assign it. There also would be a problem with the statute of limitations, which has now run. Although plaintiff maintains that the statute of limitations might be subject to equitable tolling, the equities are not at all with plaintiff. Plaintiff brought this suit twice and has been on notice of the defects alleged by defendants since 1981.

The only other conceivable recourse is for plaintiff to be substituted by either Lemmon, Premo New Jersey or Premo New York. Lemmon, however, has made clear that it has no interest in prosecuting this action, and again it is not clear that Lemmon actually ever purchased the claim. A suit by Premo New Jersey would be subject to the defense that the statutory merger between Premo New York and Bio-research was invalid. Also, as defendants correctly point out, it would be virtually impossible now to put the pieces of Premo New Jersey back together again. The same is true for Premo New York, and only if it were reconstructed could this suit go forward.

In short, there is no way for Messrs. Blackman and Silverang to climb out of the box into which they have placed themselves. They should not have sought to speculate on a cause of action in the courts of the United States. The Court has given careful consideration to their case, and will not countenance any further arguments that they are entitled to relief here. In light of their conduct, they are not entitled to receive any equitable consideration from this or any other Court.

### CONCLUSION

For all of the foregoing reasons, the Court shall enter an order granting summary judgment in favor of defendants.